THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JESSE ANDERSON, a/k/a Jessie R. Anderson, Defendant-Appellant.

First District (5th Division)    No. 79-1821

Opinion filed March 27, 1981.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Alexander Vroustouris, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of aggravated battery and was sentenced to two years imprisonment (Ill. Rev. Stat. 1977, ch. 38, par. 12—4.) On appeal he contends (1) he was deprived of his right to an impartial trier of fact because the trial judge was a former neighbor of a prosecution witness who was the mother of the complainant; (2) he should not be bound by his attorney's waiver of the opportunity to request that the trial judge recuse himself; (3) there was ineffective assistance of counsel when his attorney, without consulting him, waived the opportunity to ask the trial judge to recuse himself; (4) the State's evidence was not sufficient to prove, beyond a reasonable doubt, that his use of force was not justifiable; and (5) it was error to admit testimony about the complainant's medical condition from witnesses who were not medical experts.

Yvonne Lofton, the only prosecution occurrence witness, was the "common law wife" of Wallace Davis, the complainant. Late in the evening of May 29, 1978, she left a pool hall with Davis and a man whose name she did not know. Davis was carrying his pool cue, disassembled, in a carrying case. When she turned around she saw the defendant, Jesse Anderson, carrying a coat over his arm. Davis gave her the cue case and told her to get in their car. She assumed that the third man turned the corner and kept on walking. As she was getting into the car, she heard Anderson say to Davis, "You dirty m————— You know what you did?" The two men argued angrily. When the argument seemed to be "getting out of hand," Lofton got out of the car. All she had in her hands

were the car keys. Though she couldn't hear exactly what the two men were saying, when she looked at Anderson, she "could see the anger in his face." Davis didn't have anything in his hands, but Anderson pulled an umbrella out from under his coat and stabbed Davis in his left eye. When Davis fell, blood was shooting out of the eye. As Lofton started toward Anderson, he tried to stab her with the umbrella, but he missed and ran away. When she saw Davis several days later, his left eye was gone.

Lofton admitted that she had been convicted of theft, prostitution, and possession of marijuana. Because of another theft charge, she was residing in county jail at the time of trial.

The other prosecution witness was Davis' mother. When she was called to testify, the trial judge announced that he recognized her as a former neighbor of his:

"[T]he parties should know and the record should reflect that the witness that is coming to the stand now, the court knows was a former neighbor of this witness and I want to so advise all the parties that [sic] is the first time I have seen her up close and I recognize her."

In response, defendant's attorney said, "We have no objection." Mrs. Davis testified that she saw her son Wallace in the hospital some time after May 29. She volunteered that she thought he was going to die. When asked if she noticed anything different about his eyes, she said, "Well, his eye was poked out with an umbrella." She also said that the doctors at the hospital told her that they could not save the eye and that it had to be removed. Later, she noticed that her son was paralyzed on the right side and that he was unable to speak. After 5½ months in the hospital he was discharged. But, at the time of trial he was still receiving medical treatment, still partially paralyzed, and still unable to speak clearly. The defense attorney objected to both the hearsay and the statements of opinion in her testimony, but the objections were overruled.

The defendant testified that, on May 29, 1978, he saw Davis in a car with another man and Lofton. Davis, who had a reputation of being affiliated with a street gang, owed defendant $120. When Davis got out of the car, he was carrying the bottom half of a cue stick. Defendant asked for his money, and Davis explained that, because of some bad luck, he would not be able to repay the loan for a few more days. Defendant testified: "We came to an agreement, he would give me my money on the first." As they were talking, Lofton and the unidentified man got out of the car. She carried a tire iron, and she "started running off at the mouth." The other man stood behind her. Davis told her to shut up. Before walking away, defendant told Davis, "[J]ust have my money."

After walking half a block, defendant saw that Davis, Lofton and the third man had followed him. Davis said, "Don't you know I am a chief in

the Stone." When defendant replied, "[J]ust have my money, that is all," Davis slapped him and said, "You ain't nothing but a bitch no way." Defendant replied, "What's the matter with you, you crazy?" Davis slapped him again and raised the cue stick, but before Davis could strike him, defendant poked Davis in the face with an umbrella. Lofton threw the tire iron at defendant from three feet away, but he knocked it away and stabbed at her with the umbrella. The other man pulled out a knife and, when Lofton jumped back to avoid being stabbed with the umbrella, she bumped into the man with a knife, knocked him off balance, and gave defendant a chance to run away.

The umbrella was bent out of shape, and defendant threw it away. The next day he went to a police station and reported that he had been attacked. He told a lieutenant from homicide what had happened, and identified Wallace Davis by name. On cross-examination he was asked what the lieutenant said in response. Defendant testified, "Well he didn't say anything. I told him I was going to make bond, get my bond money together, that is all."

The lieutenant let him go and defendant wasn't arrested until June 6. Again, he said, he told the police how he had been attacked.

OPINION

■■ The initial contention, on appeal, is that defendant was deprived of an impartial trier of fact because the trial judge who found him guilty was a former neighbor of a prosecution witness who was the complainant's mother. It is undisputed that it would be fundamentally unfair to force a defendant in a criminal case to have the question of guilt decided by a judge who had a direct, personal, substantial pecuniary interest in deciding against him. (*Ward v. Village of Monroeville* (1972), 409 U.S. 57, 34 L. Ed. 2d 267, 93 S. Ct. 80.) However, "All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion." (*Tumey v. Ohio* (1927), 273 U.S. 510, 523, 71 L. Ed. 749, 754, 47 S. Ct. 437, 441.) In *Tumey*, a court system was attacked as fundamentally unfair because the mayor, who was authorized to sit as a judge, would not be paid for his services as a judge unless the defendant was convicted. Additionally, a substantial amount of city revenue came from fines imposed by the mayor. As the United States Supreme Court concluded, "[M]ight not a defendant with reason say that he feared he could not get a fair trial or a fair sentence from one who would have so strong a motive to help his village by conviction and a heavy fine?" (*Tumey v. Ohio* (1927), 273 U.S. 510, 533, 71 L. Ed. 2d 749, 758-59, 47 S. Ct. 437, 445.) When a judge has a direct,

personal, substantial pecuniary interest in finding a defendant guilty, there is a denial of due process because there is a presumption of bias against the defendant. (*Ward v. Village of Monroeville*.) However, as the court pointed out in *Tumey*, not every challenge to the ability of a judge to impartially decide a case involves a constitutional violation. For instance, in *United States ex rel. Perry v. Cuyler* (3d Cir. 1978), 584 F. 2d 644, *cert. denied* (1979), 440 U.S. 925, 59 L. Ed. 2d 480, 99 S. Ct. 1257), the sole issue was whether there was a denial of the sixth and fourteenth amendment rights to a fair trial when a judge who presided at a jury trial refused to disqualify himself even though he was acquainted with, and went to the funeral of, the defendant's alleged victim. After examining the circumstances of the case, the third circuit held that disqualification was not necessary because the trial judge's possible interest in the outcome of the case was not substantial enough to make unfairness probable. See also *People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867 (in seeking a disqualification for cause the defendant has the burden of showing actual prejudice which would interfere, with a fair determination of guilt or innocence).

Therefore, to establish that there is a denial of the right to trial by an impartial trier of fact, the defendant has the burden of rebutting the presumption of impartiality by proving that the nature of the trial judge's acquaintanceship is substantial enough to make unfairness probable.

■■ Here, the defendant has not met his burden of showing actual prejudice, and we conclude he was not deprived of his right to have his case decided by an impartial trier of fact.

■■ Defendant's second contention is that he should not be bound by his attorney's waiver of the opportunity to request that the trial judge recuse himself. The issue is whether it would be repugnant to commonly held notions of justice and fair play to hold that the defendant is bound by his attorney's waiver. As the supreme court stated in *People v. Brown* (1968), 39 Ill. 2d 307, 310, 235 N.E.2d 562:

> "For a representative system of litigation to function, it is self-evident that under most circumstances clients must be bound by the acts of their lawyers. However, it is equally self-evident that a mechanical application of this legal proposition can lead to harsh results repugnant to commonly held notions of justice and fair play."

Both *Brown* and *People v. Aliwoli* (1975), 60 Ill. 2d 579, 328 N.E.2d 555, involve cases where appeals were dismissed because of neglect by the appellant's attorney. Applying agency rules in such cases would have deprived the clients of their day in court. But, in the case at bar, defendant has not rebutted the presumption that the trial judge decided the case

impartially, and there is no fundamental unfairness in binding him to his attorney's waiver. Accord, *People v. Newson* (1971), 133 Ill. App. 2d 391, 273 N.E.2d 416.

■■ The third contention is that it was ineffective assistance of counsel for the defense attorney, without consulting defendant, to waive the opportunity of seeking a substitution of judges. Counsel's action in waiving a possible objection to the trial judge, can at most, merely be interpreted as a tactical choice. Such a decision, made by an attorney in the course of trial, does not indicate that the representation reduced the trial to a sham or a farce. *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.

The fourth contention is that the evidence was insufficient to prove, beyond a reasonable doubt, that defendant's use of force was not justified. We find that the testimony of Yvonne Lofton was consistent, reasonable, credible, and sufficient to sustain a conviction beyond a reasonable doubt. The trial judge was entitled to give Lofton's testimony more weight than the defendant's.

The testimony of one witness can be sufficient to sustain a conviction, even though it is contradicted by the defendant. (*People v. Clark* (1976), 39 Ill. App. 3d 237, 350 N.E.2d 87.) The trier of fact is not obligated to accept the defendant's testimony as true. *People v. Campbell* (1978), 57 Ill. App. 3d 456, 373 N.E.2d 506.

> " 'It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses [citations], and we will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt.' " *People v. Clark* (1976), 39 Ill. App. 3d 237, 240, 350 N.E.2d 87, quoting *People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182.

The final contention is that it was error to admit nonexpert opinion evidence of the complainant's medical condition.

■■ The determination of whether a battery has caused "great bodily harm," and thereby constitutes aggravated battery, is a question of fact. (*People v. Lyons* (1975), 26 Ill. App. 3d 193, 324 N.E.2d 677, *cert. denied* (1975), 423 U.S. 1036, 46 L. Ed. 2d 410, 96 S. Ct. 570.) It is not necessary to present expert testimony on the issue of causation when the relationship between cause and effect is readily apparent, based on common knowledge and experience. (*People v. Brown* (1978), 57 Ill. App. 3d 528, 373 N.E.2d 459.) Only if the question of causation is beyond the general understanding of the public is the prosecution obligated to present expert evidence. *People v. Brown.*

We find that the testimony of Yvonne Lofton was sufficient to prove great bodily harm. According to her, defendant stabbed Wallace Davis in the eye with an umbrella, Davis fell to the ground with blood shooting from the eye, and when she saw Davis a few days later, the eye was gone. It is within the common understanding and experience of the general public that if you stab the point of an umbrella into a human eye and blood shoots out, the eye will be gravely damaged. The trial judge was entitled to conclude, without expert testimony, that defendant caused great bodily harm to the complainant.

■■ The testimony of the complainant's mother could not properly be used to establish that the defendant caused the complainant's paralysis. The question of whether serious injury to the left eye can cause paralysis on the right side of the body is not within the realm of common understanding.

■■ It is also improper to admit her testimony about what caused the loss of her son's eye and about what the doctor told her. However, "Where the record contains sufficient competent evidence to establish defendant's guilt beyond a reasonable doubt, the judgment will not be reversed for error in admitting evidence unless it can be seen that the error was prejudicial." *People v. Owens* (1970), 126 Ill. App. 2d 379, 383, 261 N.E.2d 785.

Since the defendant admitted stabbing the complainant in the face with an umbrella, and Lofton's testimony proves that there was serious bodily harm, we conclude that the improperly admitted evidence could not reasonably have affected the result of the case; the error was harmless.

We conclude that the prosecution's evidence on causation was not so speculative or conjectural as to cause a reasonable doubt about defendant's guilt. There was direct evidence—sufficient to sustain.defendant's conviction beyond a reasonable doubt—that his actions caused the loss of the complainant's eye.

For these reasons, defendant's conviction is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.