THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JERRY BEAUFORD, Defendant-Appellant.

First District (1st Division)   No. 1—89—0307

Opinion filed November 12, 1991.

Randolph N. Stone, Public Defender, of Chicago (Michael Davidson and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Mary Brigid Kenny, and Roseanne McDonnell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Jerry Beauford, appeals from his conviction of murder, presenting as issues whether the involuntary manslaughter instruction given incorrectly stated the burden of proof; defendant was denied a fair trial because the involuntary manslaughter instruction failed to include a definition of "recklessness"; defendant was denied a fair trial by the circuit court's incorrect instruction to the jury regarding the justifiable use of force; and the prosecutor's comments during closing arguments operated to deny defendant a fair trial.

Defendant shot the victim, Clifford Beauford (Clifford), his wife, on April 7, 1974, and immediately fled the jurisdiction. Law enforcement agents apprehended him 13 years later in Alabama. Following extradition proceedings, defendant was indicted for murder. A jury found him guilty as charged, and the court sentenced him to not less than 17 years and no more than 35 years in the custody of the Department of Corrections.

At trial, Chicago police officer Stanley Gorniak testified that he found Clifford in her bedroom, lying on the floor between the bed and a chair. The bedroom bore no signs of a struggle. Gorniak recovered a .38 caliber revolver from under the mattress.

Jeannie McCray, Clifford's daughter and an eyewitness to the shooting, lived with her mother and two sisters in the basement apartment of the house. Her grandparents lived in the upstairs apartment. At the time of the shooting, Clifford and defendant were married, but the couple had been estranged for several months. Defendant arrived at the house between 4:30 and 5 p.m. and asked Clifford to fix him something to eat. Clifford went to the kitchen, and defendant left the house for a few minutes, reentering shortly thereafter. During this time, Clifford had heated some food and had taken it into the bedroom, where defendant later joined her, leaving the door slightly ajar. An argument then ensued between the couple, and both parties exchanged harsh words. Clifford asked defendant to leave. Jeannie, who had been in the living room at this time, then pushed the bedroom door open fully and saw defendant standing in front of her mother with a gun in his hand. According to Jeannie, defendant was standing 12 feet from Clifford

and was pointing at her a gun he usually kept in the glove compartment of his car. Clifford was unarmed although Jeannie admitted that her mother normally kept her own gun "under the mattress." Defendant then shot Clifford, who fell between the bed and a chair. Jeannie ran to a neighbor's house and called police. From the neighbor's porch, Jeannie saw defendant back out of the house and "flash" his gun at her grandfather, who had come downstairs to investigate. Defendant then drove away in his car.

Brenda Griffin, a neighborhood friend of Jeannie's, was also present during the shooting and corroborated Jeannie's account of the events leading up to the shooting.

Charlene Sullivan, Jeannie's sister, was also at the house during the time in question. She left to get some ice cream and, as she returned to the house, heard what sounded like a "firecracker." As Charlene opened the door, Jeannie, who was screaming, ran out of the house. Charlene ran into her mother's room and saw defendant standing at the foot of the bed, holding a gun. Charlene then ran upstairs to her grandparents' apartment.

Dr. Tae An performed the autopsy on the victim, who died from a single gunshot wound. The bullet entered in the left shoulder and travelled downward, lacerating the left lung, the aorta and the spinal cord. Dr. An stated that the wound's appearance indicated that the victim was not shot at close range.

Several Chicago police officers testified as to their attempts to locate defendant following the shooting. Both State and Federal warrants were issued for his arrest. On August 5, 1987, defendant was arrested for drunk driving in Alabama and subsequently was extradited to face the charges at issue here.

Defendant called several witnesses who averred that Clifford had a reputation for violence in the community. Carolyn Sanders recalled that, at one time, Clifford pulled a gun on her; however, she could not remember the date or year of the incident.

Defendant testified in his own behalf. Although he and Clifford were married, defendant had engaged in a relationship with another woman during 1974 and had fathered a child by her. On the day of the shooting, he went to his wife's house. During his stay, the couple spoke in her bedroom, where defendant took off his coat and emptied his pockets. He put the gun he had with him in a dresser drawer. Eventually, the couple began to argue, and defendant decided to leave. Clifford, however, slammed the bedroom door shut and pulled out the gun that defendant had brought with him. Defendant grabbed for the gun, with both hands over his head. As

Clifford and defendant struggled for control of the gun, it went off. After Clifford fell away, defendant "froze" with the gun in his hand. At that moment, Jeannie entered the room. Defendant then fled.

I

Relying on *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, defendant raises a two-prong argument concerning the propriety of the involuntary manslaughter instructions given to the jury. Defendant first claims the instruction erroneously informed the jury that the State had to prove that defendant acted recklessly when he shot Clifford Beauford. Defendant also argues that the jury should have been instructed that the State had the burden of disproving that defendant acted recklessly when he shot Clifford.

■ Our supreme court rejected both arguments in *People v. Lucas* (1989), 132 Ill. 2d 399, 441-42, 548 N.E.2d 1003. There, the court reviewed involuntary manslaughter instructions similar to those used in the instant case and held that the State did not have to disprove recklessness in order to establish the intent or knowledge necessary for a murder conviction because recklessness is not an affirmative defense to murder, but rather, a separate and distinct mental state. "Since murder is an intentional or knowing killing [citation] and involuntary manslaughter, by definition, is an unintentional killing [citation], where a determination is made that one exists (*i.e.*, an intentional killing), to be legally consistent, the other (*i.e.*, an unintentional killing) must be found not to exist [citations]." (*People v. Lucas*, 132 Ill. 2d at 442; see also *People v. Spears* (1986), 112 Ill. 2d 396, 404, 493 N.E.2d 1030; *People v. Hoffer* (1985), 106 Ill. 2d 186, 195, 478 N.E.2d 335, *cert. denied* (1985), 474 U.S. 847, 88 L. Ed. 2d 114, 106 S. Ct. 139.) Accordingly, the involuntary manslaughter instructions given here were not erroneous.

■ Defendant also maintains that the instructions prevented the jury from considering the evidence in mitigation put forth by defendant. At bar, defendant testified as to the "accidental" nature of the shooting and presented some evidence of the victim's reputation for violence and for carrying a gun. Although the State had the burden of proving a reckless mental state to support a charge of involuntary manslaughter, it appears that any evidence regarding defendant's mental state presented by defendant in refuting the charge would be considered by the jury. (*People v. Lucas*, 132 Ill. 2d

at 443.) Based on the foregoing, no error is apparent from this record.

## II

Defendant argues that the circuit court's failure to instruct the jury on the definition of recklessness deprived him of his right to a fair trial. The jury was given Illinois Pattern Jury Instructions, Criminal, No. 7.07 (2d ed. 1981) (hereinafter IPI Criminal 2d). Defendant contends that the court should also have given IPI Criminal 2d No. 5.01, defining "recklessly," which the committee note states should be given with instruction No. 7.07.

■ Generally, the burden of preparing jury instructions is primarily on the parties, not on the circuit court, which is under no obligation either to give instructions not requested by counsel or to rewrite instructions tendered by counsel. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Moreover, no party may raise on appeal the failure to give an instruction unless he had tendered the instruction at trial. (*People v. Carlson*, 79 Ill. 2d at 583-84.) If the instruction is substantially defective, however, the waiver doctrine will not apply. *People v. Carlson*, 79 Ill. 2d at 584. See also 134 Ill. 2d R. 451(c).

■ In the present case, the court failed to give the jury a definitional instruction. The failure of a court to give *sua sponte* the definitional instruction of "recklessly" has been held not to be a substantial defect in the instructions which would preclude the application of the waiver doctrine. (*People v. Carlson*, 79 Ill. 2d at 584; *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.) Defendant, therefore, has waived his right to complain on appeal.

## III

Defendant next claims the jury was not instructed properly on the issue of justifiable use of force in self-defense since no instruction was given which stated that the State had the burden of proving beyond a reasonable doubt that the use of deadly force was not justified, citing *People v. Reddick* (123 Ill. 2d at 148).

The jury in this case received a series of instructions, based upon IPI Criminal 2d Nos. 2.03 ("The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence"); 7.02A ("To sustain the charge of murder or the charge of voluntary manslaughter, the State must prove the following propositions ***[;] [t]o sustain the

charge of murder instead of voluntary manslaughter, the State must prove beyond a reasonable doubt the following additional proposition"); and 24–25.06("A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the use of imminent use of unlawful force"). The jury was not given IPI Criminal No. 25.05, which provides that, in addition to the elements of the crime, the State must prove beyond a reasonable doubt "[t]hat the defendant was not justified in using the force which he used."

As noted above, the failure to object at trial to an asserted error in jury instruction waives the question (*People v. Carlson*, 79 Ill. 2d at 583-84), and no party may raise on appeal the failure to give an instruction unless he tendered it at trial. (*People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513.) At bar, defendant neither objected to IPI Criminal 2d No. 7.02A nor tendered IPI Criminal 25.05 to the court. Further, defendant failed to raise the issue in his post-trial motion. As a result, the issue is waived. See *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.

Defendant, however, maintains that the circuit court's failure to give IPI Criminal 25.05 constituted plain error under Supreme Court Rule 451(c) (134 Ill. 2d R. 451(c)) and *People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742. In *Berry*, the supreme court noted that the waiver rule was to be applied to all cases except those in which "grave error" must be corrected or those in which the evidence is so close factually "that fundamental fairness requires the jury be properly instructed." (*People v. Berry*, 99 Ill. 2d at 505, citing *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) In *Berry*, the court relied on *People v. Huckstead* (91 Ill. 2d 536, 440 N.E.2d 1248), where the court found that the instructions tendered (IPI Criminal Nos. 2.03, 7.02, 24.06), in conjunction with the closing arguments given by both sides, sufficiently informed the jury that the State had the burden of proving that defendant was not justified in the force that he used. (*People v. Huckstead*, 91 Ill. 2d at 545.) Additionally, defense counsel, during his argument, repeatedly informed the jury of the necessity that the State prove that defendant was not justified in the force he used. In rebuttal argument, the State also iterated that it had the burden to show that the force used was not justified. The court found that the failure to give IPI Criminal No. 25.05 did not constitute grave error under these facts. *People v. Huckstead*, 91 Ill. 2d at 546.

In *Berry*, however, the court ruled that neither counsel's arguments informed the jury of the State's burden of proving, beyond a reasonable doubt, that the defendant was not justified in his use of force. Moreover, the evidence in *Berry* was held to be factually close. (*Cf. People v. Huckstead*, 91 Ill. 2d at 547.) As a result, the waiver rule could not be applied, and a new trial was required. *People v. Berry*, 99 Ill. 2d at 506-07.

■ At bar, defense counsel argued that the State had the burden to prove defendant guilty beyond a reasonable doubt of the charge of murder. The State never mentioned its burden in either its closing or rebuttal arguments. Although the arguments at bar do not rise to the level of completeness found in *Huckstead*, the jury here was informed, through the court's instructions, of the State's burden of proof. With respect to the "factually close" prong of the plain error test, a review of the record reveals that the evidence was not factually close. The eyewitness account of the shooting and the medical testimony contradicts defendant's account of a close range, accidental shooting. Under the circumstances of this case, the circuit court's failure to give IPI Criminal No. 25.05 does not constitute reversible error.

IV

Defendant cites four instances of improper closing remarks made by the State which he claims operated to deny him a fair trial.

■ It should be noted initially that all but one of the remarks were unobjected to at trial and raised in the post-trial motion. Failure to object to a remark at trial and the failure to specifically raise the argument in the written post-trial motion have been held to constitute a waiver of the issue upon appeal. (See *People v. Thomas* (1990), 137 Ill. 2d 500, 524, 561 N.E.2d 57, *cert. denied* (1991), 488 U.S. 1127, 112 L. Ed. 2d 1196, 111 S. Ct. 1092; *People v. Surles* (1984), 126 Ill. App. 3d 216, 226, 466 N.E.2d 1295.) Accordingly, the unobjected-to remarks must be considered waived.

■ Nevertheless, in reviewing defendant's allegations here, it has long been recognized that, generally, a prosecutor is allowed a great deal of latitude in making the closing argument and the circuit court's determination of the propriety of the argument will be followed absent an abuse of discretion. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 175-76, 514 N.E.2d 970.) Improper remarks are the basis of reversal only where they result in substantial prejudice to the defendant. (*People v. Piscotti* (1985), 136 Ill. App. 3d 420, 441,

483 N.E.2d 363.) Furthermore, a defendant may not assert such prejudice where the comments were provoked or invited by the arguments of his counsel.

██ The first comment complained of is the prosecutor's reference to crime:

"Ladies and Gentlemen, everyday you can pick up the paper and you can curse crime and you can see about burglaries and robberies and rapes *** and something has to be done."

Defendant's objection was overruled by the circuit court. Defendant argues here that the comment served to inflame the passions of the jury. We disagree. A prosecutor may comment on the evils of crime, denounce the accused and urge the jury to engage in the fearless administration of justice. (*People v. Stiff* (1989), 185 Ill. App. 3d 751, 756, 542 N.E.2d 392.) The comment does not constitute error.

██ Defendant next points to the prosecutor's continued references to the time defendant had to "concoct" a story to explain his actions if he got caught. Although unobjected to at trial, defendant now claims that such comment created prejudice because the prosecutor portrayed him to the jury as a liar. The prosecutor's argument was founded upon the evidence and the legitimate inferences drawn from it and as such was proper since defendant's version of the shooting was contrary to both the eyewitness testimony and the medical testimony. See *People v. Harris* (1989), 187 Ill. App. 3d 832, 842, 543 N.E.2d 859.

██ Defendant also contends that the prosecutor's assertion that the downward path of the fatal bullet resulted from Clifford's twisting away from defendant as he fired at her was unsupported by the evidence. This argument is unpersuasive since a prosecutor may argue upon the facts or legitimate inferences drawn from the evidence. (*People v. Harris*, 187 Ill. App. 3d at 842.) Dr. An testified that the bullet travelled downward after entering Clifford's left shoulder. Jeannie McCray stated that defendant was standing in front of Clifford when he shot her and that Clifford's face looked "strange." It is not unreasonable to infer from this evidence that Clifford may have turned away to avoid the impact of the bullet. The complained-of remark was not error.

██ Finally, defendant alleges that the prosecutor misstated the law by claiming that "[t]here is one charge here and the charge is murder that the defendant did in fact commit the acts which caused the death of *** Clifford Beauford." Even if this court were to find this remark erroneous, we consider it harmless since the circuit court gave the jury proper instructions and advised it that the

closing arguments were not evidence. See *People v. Stiff* (1989), 185 Ill. App. 3d 751, 756, 542 N.E.2d 392.

Accordingly, the remarks complained of within the context of the closing argument, whether considered individually or cumulatively, did not result in substantial error, constitute a material factor in conviction, or operate to deny defendant a fair trial. *People v. Morando* (1988), 169 Ill. App. 3d 716, 733, 523 N.E.2d 1061.

Based on the foregoing, defendant's conviction must be affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.