THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLIFFORD ANDERSON, Defendant-Appellant.

First District (5th Division)    No. 1—89—1199

Opinion filed September 23, 1994.

Frederick F. Cohn, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Defendant, Clifford Anderson, was charged by indictment with various counts of murder and armed violence.[1] At the conclusion of a jury trial, the defendant was found guilty of two counts of murder and two counts of armed violence for the murders of Robert Williams and Mack Sutton and was sentenced to natural life.

On appeal the defendant raises several issues. They are: (1) whether he was denied due process because several jury instructions were denied, improperly given over his objection, or not given *sua sponte* by the trial court; (2) whether he was denied due process and effective assistance of counsel when his defense counsel refused to abide by defendant's decision not to present an insanity defense; (3) whether the prosecution erroneously presented a previously undisclosed admission of the defendant; (4) whether the defendant was denied the right of confrontation; (5) whether the trial court errone-

---

[1]The instant appeal is taken from defendant's convictions which resulted from his third trial. The first trial resulted in a hung jury; and the second trial, which resulted in a conviction for murder and sentence of death, was reversed and remanded for a third trial.

ously denied defendant a fitness hearing; (6) whether the defendant improperly was prevented from presenting relevant testimony; (7) whether the jury selection was improper; (8) whether improper and prejudicial prosecutorial acts occurred at trial; and (9) whether during closing argument defense counsel improperly was prevented from disclosing the consequences of a finding of not guilty by reason of insanity.[2]

OPINION

I

The defendant's first argument on appeal is that he was denied due process because several jury instructions were denied, improperly given over defendant's objection or not given *sua sponte* by the trial court. Initially, the defendant contends that the trial court committed error with respect to his conviction of the murder of Sutton when it refused to give a voluntary manslaughter instruction and to amend the murder instruction accordingly.

The defendant argues that a voluntary manslaughter instruction should have been given with respect to Sutton's death because the evidence presented at trial could support a jury finding that he either acted in the unreasonable belief of justification or acted under a sudden and intense passion caused by adequate provocation (Ill. Rev. Stat. 1977, ch. 38, par. 9—2; *cf.* 720 ILCS 5/9—2 (West 1992) (voluntary manslaughter replaced by second degree murder)). The evidence, solely based upon his own testimony, was that he was attacked by Sutton, that Sutton pulled a gun on him and that a struggle ensued during which the gun discharged, killing Sutton.

In support of his argument, the defendant relies on *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378, for the proposition that, whenever a self-defense instruction is given in a murder case, a voluntary manslaughter instruction also is required. We do not believe that *Lockett* is so encompassing. Rather, *Lockett* held that self-defense and voluntary manslaughter instructions should be given when any evidence is presented showing the defendant's subjective belief that deadly use of force was necessary. A question must exist, however, as

---

[2]This opinion is 51 pages in its entirety. In order to comply with the appellate court opinion page limitations specified by amended Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994) and Administrative Order MR No. 10343, effective July 1, 1994, issues three through nine, as well as the factual background, have been designated nonpublishable material and appear in their entirety in the unpublished Rule 23, *People v. Anderson*, docket No. 1—89—1199.

to whether that subjective belief is reasonable, resulting in a verdict of not guilty, or unreasonable, resulting in a verdict of voluntary manslaughter.

■ We believe the holding in *Lockett* is inapplicable to the facts in the instant case. In *Lockett*, the defendant's subjective belief clearly was in question, and the jury had to decide whether the defendant could reasonably believe that the concealed object the victim picked up before the defendant shot him was a gun, when it was actually an empty whiskey bottle. The court held that the evidence presented the possibility that the defendant had a subjective belief he was acting in self-defense and that it was for the jury to decide whether that subjective belief was reasonable or unreasonable. In the instant case, the reasonableness of the defendant's subjective belief was not in question. As the trial court stated, there was no evidence of an unreasonable subjective belief; rather, the evidence elicited from the defendant's testimony was that Sutton pointed a gun at the defendant, that a struggle ensued, and that the gun went off, fatally injuring Sutton. The question for the jury to decide was whether the factual scenario alleged by the defendant occurred. If the jury believed it did, and that Sutton instigated the altercation and threatened the defendant by pointing the gun at him, then the jury could conclude that the defendant could reasonably believe that the use of deadly force was necessary to prevent imminent death or great bodily harm to himself (Ill. Rev. Stat. 1977, ch. 38, par. 7—1 (now 720 ILCS 5/7—1 (West 1992))). If the jury disbelieved the defendant's testimony and believed the testimony of the other witnesses, then there was no physical altercation between Sutton and the defendant and, instead, the defendant was the aggressor; had possession of the gun; walked over to Sutton; and shot him. Under this latter factual scenario, the defendant would be guilty of murder. In either case, there can be no question of an unreasonable belief by the defendant, and, therefore, the defendant was not entitled to a voluntary manslaughter instruction under section 9—2(b) of the Criminal Code of 1961 nor was the defendant entitled to a murder instruction placing upon the State the burden of disproving beyond a reasonable doubt the existence of an unreasonable belief of justification (see *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141).

Even assuming *arguendo* that an error occurred in instructing the jury on mitigating mental conditions, this error would not warrant a new trial since the result of the trial would not have been different had the arguably correct instructions been given. (*People v. Fierer* (1988), 124 Ill. 2d 176, 529 N.E.2d 972.) In *People v. Moleterno* (1990), 199 Ill. App. 3d 15, 556 N.E.2d 703, the defendant's murder

conviction was affirmed despite the fact that the jury received the identical murder and voluntary manslaughter instructions found to be erroneous in *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141. In *Moleterno*, the defendant and victim had been involved in an altercation while driving their automobiles. The defendant's testimony was the only evidence pertaining to his perceptions or subjective belief in the need to use deadly force. The court held that his testimony was contradicted and impeached by other direct and circumstantial evidence; that his lack of belief in the need to use deadly force was so clear and convincing; that the trial result would not have been different had the arguably correct instructions been given; and that, therefore, the error, if any, was harmless beyond a reasonable doubt. (See also *People v. Beauford* (1991), 249 Ill. App. 3d 943, 621 N.E.2d 1.) We believe that the same conclusions can be reached here and that, therefore, the error, if any, is harmless beyond a reasonable doubt.

■ For similar reasons we affirm the trial court's denial of a voluntary manslaughter instruction pursuant to section 9—2(a) of the Criminal Code of 1961 and the corresponding murder instruction required by *People v. Reddick*. There was no evidence in the record from which the jury could find the defendant was acting under a sudden, intense passion resulting from provocation when Sutton was shot. As the trial judge stated, the acts related by the defendant leading up to the shooting of Sutton were not sufficient acts of provocation which would engender passion or a killing in the heat of passion. The defendant's testimony supported a theory of self-defense and a desire to protect himself. See *People v. Handley* (1972), 51 Ill. 2d 229, 282 N.E.2d 131; *People v. DeRosa* (1941), 378 Ill. 557, 39 N.E.2d 1 (self-defense instruction given, voluntary manslaughter instruction refused).

The defendant next contends that the trial court committed error when it refused to amend the armed violence instruction to include language that the State must prove beyond a reasonable doubt that the defendant was not justified in using the force he used against Sutton. At trial, the jury was presented with the issues instruction for armed violence, Illinois Pattern Jury Instructions, Criminal, No. 11.20 (2d ed. 1981) (hereinafter IPI). Unlike the tendered murder instruction, this instruction did not contain language placing the burden on the State to prove beyond a reasonable doubt the additional element that the defendant was not justified in using the force he used. The jury also was given a definitional instruction covering the justifiable use of force in self-defense (IPI Criminal 2d No. 24—25.06 (formerly IPI Criminal No. 24.06 (1968))) along with an

instruction informing the jury that the burden of proof remained with the State (IPI Criminal No. 2.03).

In *People v. Wells* (1982), 110 Ill. App. 3d 700, 442 N.E.2d 1341, a case cited by the defendant, the identical jury instructions for murder, aggravated battery and self-defense were given. An additional instruction for involuntary manslaughter was given. The court found that the conspicuous absence of the self-defense language from the aggravated battery and involuntary instructions, while present in the murder instruction, could lead a diligent jury to conclude that, although absence of justification was required to prove murder, it was not required to prove armed violence or involuntary manslaughter. The court concluded that the defendant may well have been convicted of involuntary manslaughter and aggravated battery because the issues instructions omitted any reference to self-defense. The case was reversed and remanded for a new trial because the court found the case was factually close.

■ While we agree with *Wells* and find that the aggravated battery instruction was erroneous in that it did not contain any reference to self-defense and the State's burden to prove beyond a reasonable doubt that the defendant was not justified in the use of force he used, we do not believe a reversal and remand are required. In the instant case, unlike in *Wells*, the jury convicted the defendant of murder and, in order to do so, had to find that the State proved beyond a reasonable doubt that the defendant's use of force was not justified. Also, the facts in the instant case are not factually close. The evidence against the defendant was overwhelming and included the testimony of two eyewitnesses. The only evidence in support of the defendant's theory of self-defense was his own testimony. See *People v. Beauford* (1991), 249 Ill. App. 3d 943, 621 N.E.2d 1.

■ The defendant next argues that the trial court erred when it refused defendant's non-IPI Criminal instruction which would have advised the jury on the consequences of a verdict of not guilty by reason of insanity. Illinois courts have held that, generally, a jury should not be told of the consequences of a verdict of not guilty by reason of insanity because it would inject extraneous and irrelevant matters into the jury's deliberations which have no bearing on the defendant's guilt (*e.g., People v. Parker* (1983), 113 Ill. App. 3d 321, 447 N.E.2d 457; *People v. Meeker* (1980), 86 Ill. App. 3d 162, 407 N.E.2d 1058). As stated in *People v. Meeker*:

"The jury's verdict should not be influenced by its possible consequences. [Citation.] Such an instruction invites the jury to reach a compromise verdict ***. *** It does not appear that requiring such an instruction in all cases involving an insanity defense, or

even in close cases, would help the jury reach a true and correct verdict." (86 Ill. App. 3d at 170, 407 N.E.2d at 1065.)

In accordance with *People v. Meeker*, the trial court in the instant case properly denied defendant's instruction regarding the consequences of a verdict of not guilty by reason of insanity.

Defendant's fourth alleged instruction error concerns the trial court's failure to *sua sponte* instruct the jury on the issue of involuntary manslaughter with respect to the shooting of the second victim, Williams.

Generally, a trial court is under no duty to give instructions which are not requested by either party (*e.g., People v. Hall* (1983), 117 Ill. App. 3d 788, 453 N.E.2d 1327), and it is the burden of the party who desires a specific instruction to present it to the court and request that it be given to the jury (*e.g., People v. Quick* (1992), 236 Ill. App. 3d 446, 603 N.E.2d 53). The failure to request an instruction normally constitutes a waiver. (*People v. Sanders* (1984), 127 Ill. App. 3d 471, 469 N.E.2d 287.) Under the plain error exception, however, substantial defects cannot be waived, and the party seeking to avoid waiver has the burden of establishing that the defect was substantial and the error resulted in denial of a fair trial. (See *People v. Hall* (1983), 117 Ill. App. 3d 788, 453 N.E.2d 1327.) This exception should only be invoked when the evidence is so closely balanced that the verdict of the jury may have resulted from the error. *People v. Sanders*, 127 Ill. App. 3d 471, 469 N.E.2d 287.

■ In the instant case, we find that the defendant waived any error with regard to the giving of an involuntary manslaughter instruction because none was tendered at trial. We also find that an involuntary manslaughter instruction was not required by the evidence. In order for an involuntary manslaughter instruction to be given, evidence must be adduced at trial that a human being was killed by actions which "are likely to cause death or great bodily harm *** and [are] perform[ed] *** recklessly" (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a) (now 720 ILCS 5/9—3(a) (West Supp. 1993))). There was no evidence at trial to support a finding of recklessness; rather, the defendant testified that he accidentally shot Williams when, while carrying the gun, he was pushed by a third individual. See *People v. Moore* (1980), 89 Ill. App. 3d 202, 411 N.E.2d 579 (defendant's theories of self-defense, accident and insanity belie recklessness).

Even if an involuntary manslaughter instruction should have been given, we also find that the error was not plain error because the evidence was not closely balanced. As stated above, the defendant's testimony was the only evidence pertaining to the issue, and it

was contradicted by other direct and circumstantial evidence which the jury believed to be more credible having found the defendant guilty of murder. See *People v. Moleterno* (1990), 199 Ill. App. 3d 15, 556 N.E.2d 703.

Next, the defendant contends that error was committed when the trial court refused to amend the murder instruction with nonpattern jury instruction language that the jury should consider any evidence offered in defendant's insanity defense to determine whether the State proved defendant's *mens rea* for the murder charges and whether the State proved that the defendant had committed voluntary manslaughter having had an unreasonable belief of justification. Generally, approved pattern jury instructions are to be used, and they may be modified or supplemented only when the facts of the particular case warrant it. The decision of whether to give a tendered nonpattern jury instruction is discretionary with the trial court. *People v. Mitchell* (1984), 129 Ill. App. 3d 189, 472 N.E.2d 114.

■ In the instant case, the trial court rejected defendant's nonpattern jury instructions. In *People v. McDarrah* (1988), 175 Ill. App. 3d 284, 529 N.E.2d 808, the court rejected a similar nonpattern jury instruction tendered by the defendant. The appellate court affirmed, stating the tendered instruction was unnecessary where there was nothing in the approved instructions to preclude the jury from using defendant's evidence to find that the State had failed to prove the *mens rea*. (See also *People v. Clemons* (1989), 179 Ill. App. 3d 667, 534 N.E.2d 676.) In accordance with *McDarrah*, we cannot say that the trial court's decision in the instant case was an abuse of discretion. We also cannot not say that the denial of the nonpattern jury instruction was erroneous with respect to the defendant's voluntary manslaughter argument since, for the reasons stated above, there was no evidence at trial to support the giving of a voluntary manslaughter instruction to the jury.

The defendant's final contention with respect to his first issue on appeal involves the failure of the court to *sua sponte* include language in the self-defense instruction (IPI Criminal 2d No. 24—25.06) advising the jury that deadly force may be used to prevent the commission of a forcible felony. The defendant argues that this language was necessary because his testimony stated that Sutton had committed an aggravated battery upon him on the public way (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(b)(8) (now 720 ILCS 5/12—4(b)(8) (West Supp. 1993))).

■ We find that the defendant waived this argument because he failed to request or tender such an instruction. (*E.g., People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) We also find that the error,

if any, was not plain error and was capable of being waived since it was not grave and since the evidence was not close factually. *People v. Berry* (1984), 99 Ill. 2d 499, 460 N.E.2d 742.

## II

The defendant's second argument on appeal is that he was denied due process and effective assistance of counsel when his defense counsel refused to abide by defendant's decision not to present an insanity defense.

It is well settled that an attorney must take professional responsibility for the conduct of the case after consulting with his client. (*Jones v. Barnes* (1983), 463 U.S. 745, 753 n.6, 77 L. Ed. 2d 987, 994 n.6, 103 S. Ct. 3308, 3313 n.6; *People v. Johnson* (1991), 220 Ill. App. 3d 550, 581 N.E.2d 118.) While the attorney is considered to be the " 'manager' of the case" (*Johnson*, 220 Ill. App. 3d at 558, 581 N.E.2d at 124, quoting *People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 532, 463 N.E.2d 139, 144), there are certain ultimate decisions, involving fundamental rights, that can only be made by the defendant regardless of competent counsel's advice to the contrary (*Johnson*, 220 Ill. App. 3d 550, 581 N.E.2d 118; *People v. Knox* (1978), 58 Ill. App. 3d 761, 374 N.E.2d 957). These fundamental rights are limited to: what plea to enter; whether to waive a jury trial; whether to testify on one's behalf; and whether to appeal. *People v. Ramey* (1992), 152 Ill. 2d 41, 604 N.E.2d 275; see also *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182 (jury waiver); *People v. Whitfield* (1968), 40 Ill. 2d 308, 239 N.E.2d 850 (right to plead guilty); *People v. Sifford* (1993), 247 Ill. App. 3d 562, 617 N.E.2d 499 (waiver of statute of limitations); *People v. Loera* (1993), 250 Ill. App. 3d 31, 619 N.E.2d. 1300; *People v. Henne* (1988), 165 Ill. App. 3d 315, 518 N.E.2d 1276; *People v. Knox*, 58 Ill. App. 3d 761, 374 N.E.2d 957 (right to testify).

When a fundamental right is not at stake, and the decision relates to a matter of trial strategy or tactics, trial counsel, after consulting with his client, has the right to make the ultimate decision. (*People v. Ramey*, 152 Ill. 2d 41, 604 N.E.2d 275.) Matters of trial strategy that involve "the superior ability of trained counsel" (*Jones v. Barnes*, 463 U.S. at 751, 77 L. Ed. 2d at 993, 103 S. Ct. at 3313) include: whether to offer certain evidence or call particular witnesses (*People v. Barrow* (1989), 133 Ill. 2d 226, 549 N.E.2d 240; *People v. Smith* (1993), 249 Ill. App. 3d 460, 619 N.E.2d 799; *People v. Johnson* (1991), 220 Ill. App. 3d 550, 581 N.E.2d 118); whether and how to conduct cross-examination; what jurors to accept or strike; what motions to make (*People v. Ramey*, 152 Ill. 2d 41, 604 N.E.2d 275); whether to seek substitution or recusal of a judge (*People v. Campbell*

(1984), 129 Ill. App. 3d 819, 473 N.E.2d 129; *People v. Anderson* (1981), 95 Ill. App. 3d 143, 419 N.E.2d 472); and what instructions to tender (*People v. Rachel* (1984), 123 Ill. App. 3d 600, 462 N.E.2d 959; *cf. People v. Brocksmith* (1992), 237 Ill. App. 3d 818, 604 N.E.2d 1059, *appeal allowed* (1993), 149 Ill. 2d 653, 612 N.E.2d 516 (jury instruction combined with statute of limitation waiver)).

Similarly, the decision of what defense theory to present at trial has been held to be a matter of trial strategy which is ultimately decided by trial counsel. In *People v. Ramey* (1992), 152 Ill. 2d 41, 604 N.E.2d 275, our supreme court upheld defense counsel's presentation of a self-defense theory, which was made against the defendant's wishes, and stated that the advocacy of such a theory was not a denial of due process. The court stated:

"Contrary to defendant's assertion, the defense theory to be presented to the trier of fact is not one of the matters which a defendant has the ultimate right to decide. Rather, it is a matter of trial tactics or strategy which is ultimately left for trial counsel.

The ABA Standards for Criminal Justice provide that three decisions are ultimately for the defendant in a criminal case after full consultation with his attorney: what plea to enter; whether to waive a jury trial; and whether to testify in his behalf. (ABA Standards for Criminal Justice 4—5.2 (Supp. 1986).) A defendant in a criminal case also has a fundamental right to decide whether to appeal. [Citations.]

Beyond these four decisions, however, trial counsel has the right to make the ultimate decision with respect to matters of tactics and strategy after consulting with his client. Such matters include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike and what trial motions should be made. (ABA Standards for Criminal Justice 4—5.2 (Supp. 1986).) Such matters also include the defense to be presented at trial. (See, *e.g., People v. Mikell* (1991), 217 Ill. App. 3d 814, 821; *People v. Gallardo* (1983), 112 Ill. App. 3d 764, 770 (holding that decision to rely upon one theory of defense to exclusion of all others is generally a matter of trial tactics or strategy).) Consequently, we do not find that trial counsel's advocacy of the theory of self-defense denied defendant due process." 152 Ill. 2d at 53-54, 604 N.E.2d at 281.

■ Applying *Ramey* to the instant case, we hold that the defendant was not denied due process when his trial counsel presented an insanity defense over defendant's objection. It is clear, under *People v. Ramey*, that the decision to proceed with an unauthorized defense does not vitiate the trial unless, as will be discussed later in this opinion, counsel's defense choice otherwise amounts to ineffective assistance of counsel.

In Illinois, self-defense and insanity are affirmative defenses raised by the defense during trial by the presentation of some evidence in support thereof. (See Ill. Rev. Stat. 1977, ch. 38, par. 3—2 (now 720 ILCS 5/3—2 (West 1992)).) Therefore, as in the case of the self-defense defense, the decision of whether to present an insanity defense must be perceived as a matter of trial strategy ultimately for trial counsel to decide even where such a decision contravenes the defendant's wishes.

The defendant cites two California cases to support his argument that the insanity defense cannot be presented when it contravenes a defendant's wishes. Those cases, *People v. Lomboy* (1981), 116 Cal. App. 3d 67, 171 Cal. Rptr. 812, and *In re Moye* (1978), 22 Cal. 3d 457, 584 P.2d 1097, 149 Cal. Rptr. 491, are not influential for several reasons. First, the California statutory provisions for the insanity defense are dissimilar from those in Illinois. In California, insanity is a plea to an indictment or an information made when the defendant is arraigned. (Cal. Penal Code § 1016 (West 1985).) The California Penal Code specifically mandates that "every plea must be put in *by the defendant himself* in open court." (Emphasis added.) (Cal. Penal Code § 1018; *cf.* Cal. Penal Code § 1018 (West 1985) (language amended in 1976 to "every plea must be entered or withdrawn by the defendant himself in open court").) In Illinois, as stated above, insanity is not a plea but is an affirmative defense that is raised by the defendant during trial by the presentation of some evidence in support thereof. Ill. Rev. Stat. 1977, ch. 38, par. 3—2 (now 720 ILCS 5/3—2 (West 1992)).

We also reject the California cases cited by defendant because they do not involve a conflict between the defendant and his counsel over the decision to raise insanity as a defense. *Lomboy* held that a defendant had to be rearraigned and had to personally replead the plea of not guilty by reason of insanity when an amended information was filed with reduced charges. *In re Moye* was cited in *Lomboy* for the proposition that, prior to entering a plea, a defendant must be advised of the pragmatic considerations as to length of confinement when pleading guilty by reason of insanity and when pleading guilty to the underlying offense. *Cf. People v. Gauze* (1975), 15 Cal. 3d 709, 542 P.2d 1365, 125 Cal. Rptr. 773 (neither counsel nor the court can compel a defendant to plead not guilty by reason of insanity).

While trial counsel's choice of the insanity defense was not a due process violation, we also must determine whether it deprived defendant of his right to effective assistance of counsel. The test for ineffective assistance of counsel is not whether the adversarial process was undermined by defense counsel's chosen strategy but

whether the process was so undermined by counsel's conduct that the trial could not be relied upon as having produced a just, *i.e.*, reliable result. (*People v. Ramey*, 152 Ill. 2d 41, 604 N.E.2d 275; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246; see also *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Stated another way, the defendant must establish that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different. The defendant faces a high burden in meeting the *Strickland* test. *People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118; *People v. Smith* (1993), 249 Ill. App. 3d 460, 619 N.E.2d 799.

The defendant in the case at bar contends that the result would have been different because defense counsel's use of the insanity defense diminished the effectiveness of defendant's self-defense and accident theories. He argues that defense counsel's failure to refer to defendant's chosen defenses in opening and closing remarks or to cross-examine any witnesses about those defenses effectively negated their credibility with the jury.

■ Applying the *Strickland* test to the instant case, we do not believe that the defendant has met the burden of establishing that his counsel's conduct so undermined the adversarial process such that his trial did not produce a just or reliable result and that, but for this conduct, the trial result would have been different. The defendant has not shown how defense counsel's failure to refer to defendant's chosen defenses of self-defense and accident in closing argument or to cross-examine any of the witnesses to elicit testimony in support of these defenses prejudiced him. (See *People v. Franklin* (1990), 135 Ill. 2d 78, 552 N.E.2d 743 (defense counsel's closing argument is matter of trial strategy); *People v. Smith* (1993), 249 Ill. App. 3d 460, 619 N.E.2d 799 (no prejudice in failure to cross-examine State's witnesses).) He has not even alleged that any of the trial witnesses *had* information or would have given testimony to support these defenses. In fact, the testimony of all of the occurrence witnesses, with the exception of the defendant, was contradictory to the defendant's theories of self-defense and accident. Joann Colliflower, the only eyewitness to Williams' shooting, testified that Williams was sitting at his desk when he was shot by the defendant.

With respect to the second shooting, Michael Dudley testified that he saw Sutton, the victim, standing on a concrete block in the back of the building; that the defendant was holding a small revolver in his hand; and that the defendant shot Sutton from a distance of approximately one or two feet. Again, there was not even a slight indication to support defendant's testimony that Sutton pulled a gun

on him or that a struggle ensued between the two men during which the gun discharged. Finally, the testimony of Ora Russell, defendant's roommate and cousin, did not buttress defendant's defense theories. Russell testified that the defendant took his gun from his apartment and stated that he was "going to kill them." Any attempt by defense counsel to cross-examine any of these witnesses concerning defendant's claims of self-defense and accident, in all likelihood, would have been in vain and, in all likelihood, would have further diminished the plausibility of those theories.

We also disagree with defendant's claim that he was prejudiced by defense counsel's presentation of the insanity defense because it diminished the effectiveness of his self-defense and accident theories. In support of this argument, defendant points to prosecutorial comment that the three defense theories were "totally inconsistent." While the State can argue inconsistency of defenses (*People v. Franklin* (1990), 135 Ill. 2d 78, 552 N.E.2d 743), such an argument is rebuttable; and where the facts warrant, these defenses have been presented properly as alternative theories. (See, *e.g.*, *People v. Moore* (1980), 89 Ill. App. 3d 202, 411 N.E.2d 579 (insanity, self-defense and accident); *People v. Mahon* (1979), 77 Ill. App. 3d 413, 395 N.E.2d 950 (self-defense and insanity); *cf. People v. Aliwoli* (1992), 238 Ill. App. 3d 602, 606 N.E.2d 347 (self-defense and insanity defenses contradictory where defendant testified that he was not insane at the time of the shooting).) The defenses admit the commission of the act but either provide justification or excuse. See *People v. Allegri* (1985), 109 Ill. 2d 309, 487 N.E.2d 606.

Additionally, as in the instant case, where a defendant's claims of self-defense and accident appear to be so implausible, they may actually provide support for an insanity defense. If a defendant's perception of the occurrence and his resulting actions are so incredible, a jury could find that the defendant was not capable of appreciating the criminality of his conduct or conforming his conduct to the requirements of the law (Ill. Rev. Stat. 1977, ch. 38, par. 6—2(a) (now codified at 720 ILCS 5/6—2(a) (West 1992))). Arguably, under ordinary circumstances, the failure to present an insanity defense in a case such as this could have resulted in a meritorious claim of ineffective assistance of counsel. See *People v. Howard* (1979), 74 Ill. App. 3d 138, 392 N.E.2d 775.

To summarize our holdings regarding defendant's second argument, we find that the presentation of the insanity defense was a tactical decision properly made by trial counsel. Although defendant objected to that defense, he was not denied due process or effective assistance of counsel when his attorney made the ultimate decision to proceed with that defense.

For the foregoing reasons, and for the reasons contained in the nonpublishable portions of this opinion, pursuant to Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994), the judgment of the circuit court is affirmed.

Judgment affirmed.

McNULTY and COUSINS, JJ., concur.