THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STUART I. SMITH, Defendant-Appellant.

Second District   No. 2—92—0017

Opinion filed August 18, 1993.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of Geneva (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Defendant, Stuart I. Smith, was convicted after a bench trial in the circuit court of Kane County of one count of burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—1 (now 720 ILCS 5/19—1 (West 1992))). He was sentenced to an extended term of 10 years' imprisonment, and he thereafter filed a timely appeal. In this court, defendant argues (1) that the trial judge erred to defendant's prejudice by denying him the right to present closing argument at trial; (2) that his appointed counsel abdicated her responsibility at trial when she complied with defendant's request to refrain from cross-examining three State witnesses; (3) that the trial judge improperly limited the role of standby counsel in post-trial proceedings; and (4) that the judge erred to defendant's prejudice when he did not obtain a proper waiver of defendant's right to counsel before defendant proceeded *pro se* at sentencing.

As defendant does not challenge the sufficiency of the evidence to convict him, we will not recite it in detail. In short, defendant was arrested in the early morning hours of October 28, 1990, near the scene of a break-in at a gas station in Aurora, Illinois. A side window of the gas station had been smashed and cartons of cigarettes taken. When defendant's vehicle was pulled over, a large garbage can filled with cartons of cigarettes was lying on its side in the backseat, and rubber gloves were lying on the front seat. Defendant subsequently confessed to smashing the gas station's window and absconding with a garbage can full of cigarettes which he planned to sell for $8 to $10 per carton to support himself and the drug habit he incurred in Viet Nam.

Defendant was originally represented at trial by the public defender's office, but they came to a parting of the ways after defendant filed a complaint with the Attorney Registration and Disciplinary

Commission. A private attorney (defense counsel) was then appointed to represent defendant at trial.

Defendant's trial began on May 17, 1991. Because one State witness was then unavailable, the parties agreed that the trial would be completed on June 28. Before the trial got started, defense counsel told the court that defendant had asked her to cross-examine State witnesses, but that defendant wanted to present his defense himself. Following a recess after the first three State witnesses had testified, the following discussion took place:

> "DEFENSE COUNSEL: Judge, Mr. Smith has a statement he'd like to make to the Court before we resume.
>
> THE COURT: No, I don't want to hear any statement.
>
> DEFENSE COUNSEL: Judge, Mr. Smith has told me that he would like me not to cross-examine any more witnesses.
>
> THE COURT: Okay, that's between you and him.
>
> DEFENSE COUNSEL: I wanted him to say it on the record."

Defense counsel cross-examined the next witness, the owner of the gas station, on defendant's request, but did not cross-examine the remaining three witnesses who testified that day, all of whom were Aurora police officers.

When the trial resumed on June 28, defendant informed the court that he wanted defense counsel to assume standby status so he could handle his case largely by himself. He engaged in a very abbreviated cross-examination of the State's last witness, another Aurora police officer. The State then rested and defendant moved for a directed finding, claiming that the State had not proven its case because there was no evidence placing him inside the gas station. Defendant argued that the proof, at best, showed theft by possession. The court denied the motion and then denied defendant's motion to quash the indictment after extended argument by defendant.

The court asked defendant if he had any evidence to present. The defendant replied in the negative and rested. The court then announced that there would be a finding of guilty. After a short discussion about post-trial motions, the trial judge asked defendant how he would be utilizing defense counsel. Defendant responded that he would like her assistance "here in court and possibly informally in my motion for arrest of judgment." Defense counsel then asked about her role in the upcoming proceedings:

> "DEFENSE COUNSEL: And my role is?
>
> THE COURT: Well, I'm going to come to that in a second. Mr. Smith, you can either have [defense counsel] represent you

or you can represent yourself. If you want her here in court to assist you, that's fine. But that's the only place that she's going to be is in court to assist you if you choose to represent yourself.

THE DEFENDANT: Your Honor, how about—suppose I formulate this motion and I have some questions that I would like to ask her. You mean to tell me the only time I can ask her is right here in court and I can't use the benefit of her expertise?

THE COURT: Well, if you want to represent yourself with her only here to advise you, then that's correct. If you want her to represent you, well, that's a different story. Now, she wants to know what she's supposed to do. So do I. I was under the impression when we started this morning that you wanted to represent yourself.

THE DEFENDANT: I'm going to represent myself.

\* \* \*

THE COURT: You want her back in court on [the date set for sentencing] to advise you if you need any advice?

THE DEFENDANT: Yes, sir, if its okay with her.

THE COURT: Okay, [defense counsel], as far as I'm concerned you just be here [for sentencing] to advise him if he needs you. Other than that you have no connection at all with this case based on Mr. Smith's motion he made."

Defense counsel appeared with defendant on the date originally set for sentencing, September 13, 1991. She wrote a motion for new trial with defendant at the start of the hearing. Defendant argued the motion, and it was denied. The State called a witness in aggravation and argued for an extended sentence. Defendant did not argue in response. The case was continued until October 23 for a TASC evaluation of defendant.

On October 23, defense counsel argued that the court should order drug treatment for defendant. The TASC evaluator was not present and the case was continued until the court could hear from TASC.

On October 29, a TASC evaluator testified that defendant was unacceptable for TASC. Defense counsel appeared with defendant. The court ordered a psychological evaluation of defendant. Defendant asked defense counsel to file a petition which alleged, *inter alia*, that defense counsel was ineffective. Defense counsel sought to withdraw, but defendant still desired her assistance.

Defendant and defense counsel appeared before the court on January 2, 1992. Defendant had refused to meet with a psychologist and

requested that he be sentenced so he could start post-conviction proceedings. When asked whether he wanted defense counsel to stay, defendant replied, "No, I don't want her in the courtroom with me. I don't want her no where around me." Defense counsel was then excused and defendant was given an extended sentence of 10 years' imprisonment.

## CLOSING ARGUMENT

Defendant's first claim is that he was prejudiced and denied his right to defend against the charge when the trial judge declared him guilty after he rested his case, without affording him an opportunity to present closing argument. The State replies that defendant was not denied an opportunity to defend against the charge because the finding of guilt occurred only moments after defendant presented *pro se* argument on his motion for a directed finding and immediately after defendant rested without offering any evidence on his behalf. The State claims that defendant probably saw no reason to repeat the argument he had just made, and that if defendant had wanted to present closing argument he would have asked to do so. Finally, the State argues that defendant waived this issue by failing to object at trial or include this issue in his post-trial motion.

Defendant has not waived the issue. The right to present closing argument at trial is of constitutional magnitude, regardless of whether the trial is before a judge or jury or whether the defendant is represented by counsel or represents himself. (*Herring v. New York* (1975), 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550.) We may address an alleged defect that affects substantial rights under an exception to the general rule that issues not brought to the attention of the trial court are waived for purposes of appeal. 134 Ill. 2d R. 615(a); *People v. Moman* (1990), 201 Ill. App. 3d 293, 309.

Defendant cites *Herring* in support of his claim. In that case, the United States Supreme Court found unconstitutional a New York State statute which allowed judges presiding over criminal bench trials to deny closing argument before the entry of judgment. (*Herring*, 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550.) *Herring* is distinguishable, in that *Herring* concerned a blanket legislative finding that closing arguments are extraneous.

Cases considering the question of denial of the right to present closing argument have discussed the question in terms of the right to appear and defend (*People v. McMullen* (1921), 300 Ill. 383, 389), the rights to due process and a fair trial (*People v. Diaz* (1971), 1 Ill. App. 3d 988, 992), and the right to effective assistance of counsel (*People v.*

*Smith* (1990), 205 Ill. App. 3d 153, 156-57). However, in all these cases, prejudice to the defendant was apparent. In *McMullen,* the trial court limited the defense attorney to 35 minutes for closing argument in a long trial, which was insufficient for the attorney to discuss the facts and the law of the case. (*McMullen,* 300 Ill. at 389.) In *Diaz,* the defendants were pronounced guilty by the trial judge three times before he had heard all the evidence and without closing argument. (*Diaz,* 1 Ill. App. 3d at 991-93.) In *Smith,* the trial court stopped the defense attorney during closing argument and refused to allow her to continue, denying the defendant his right to argue his case. *Smith,* 205 Ill. App. 3d at 156.

Further, the above cases all spoke of the importance of an opportunity for the defendant to argue his case, not that the opportunity be given exactly at the time for closing argument. (See *McMullen,* 300 Ill. at 389; *Diaz,* 1 Ill. App. 3d at 992; *Smith,* 205 Ill. App. 3d at 156-57.) In this case, defendant was not denied an opportunity to argue his case to the court, he was simply not given a second opportunity to do so.

■■ A number of factors convince us that no prejudice occurred to defendant. First, defendant argued a motion for a directed finding only moments before the judge found defendant guilty without closing argument. Although defendant's argument on his motion was short, it attacked the State's case, which itself was concise and straightforward. Second, defendant presented no evidence on his behalf, so that a closing argument would have necessarily been another attack on the State's case as it stood when defendant moved for a directed finding. Defendant was not denied the right to summarize or champion, for example, an alternate version of events, a justification or an alibi defense. Third, a review of the trial transcript shows that defendant was well acquainted with the rudiments of trial procedure, was articulate in his arguments, and was not reticent to express himself or demand to be heard, even when the judge was attempting to have defendant curtail his arguments.

Thus, we believe that defendant, who knew enough to move for and argue a motion for directed finding at the close of the State's case, would have asked to present closing argument if he had wanted to argue again the defects in the State's case. We hold that, although the trial judge erred by failing to make a record that defendant knew about and expressly waived his right to present closing argument, the error was harmless under the facts of this case.

CROSS-EXAMINATION

Defendant argues that he was denied his constitutional right to effective assistance of counsel when his attorney abided by defendant's request that she not cross-examine three State witnesses. Defendant claims that as long as counsel was not acting in a standby capacity, she had a duty to subject the State's case to meaningful adversarial testing, not simply follow defendant's wishes. Prejudice is presumed, defendant asserts.

The State argues that this issue is also waived because it was not mentioned in defendant's post-trial motion. On the merits, the State asserts that defendant was not prejudiced by his counsel's actions and that, at any rate, defendant should be estopped from challenging his counsel's failure to cross-examine because defendant explicitly asked her to follow his request.

We will not treat this issue as waived even though it was not raised in defendant's post-trial motion. As with the first issue, this issue could affect substantial rights. Thus, the substantial rights exception to the general waiver rule is applicable. 134 Ill. 2d R. 615(a); *People v. Moman* (1990), 201 Ill. App. 3d 293, 309.

Defendant is correct that whether to cross-examine witnesses is a decision to be made by the defense attorney, not the defendant. (*People v. Keys* (1990), 195 Ill. App. 3d 370, 374.) However, defendant is mistaken in his claim that his counsel's forbearance in this case denied him his right to effective assistance of counsel. Defendant cites *People v. Hattery* (1985), 109 Ill. 2d 449, in support of his assertion. In *Hattery* our supreme court held that a defendant who had pled not guilty to murder charges was denied the effective assistance of counsel when his trial attorney admitted defendant's guilt in opening statements, advanced no theory of defense and presented no evidence or closing argument. (*Hattery*, 109 Ill. 2d at 458-65.) The defense attorney's strategy, to protect the defendant from the death penalty, did not subject the State's case "to the 'meaningful adversarial testing' required by the sixth amendment." (*Hattery*, 109 Ill. 2d at 464, quoting *United States v. Cronic* (1984), 466 U.S. 648, 656, 80 L. Ed. 2d 657, 666, 104 S. Ct. 2039, 2045.) The failures of the defense attorney in *Hattery* are so much more egregious than those of defense counsel here that *Hattery* is of no real help to defendant. Likewise, *People v. Coss* (1977), 45 Ill. App. 3d 539, and *People v. Williams* (1989), 192 Ill. App. 3d 304, cited by defendant, are also distinguishable. In *Coss*, defense counsel refused to participate in a proceeding to revoke the defendant's probation because the attorney believed, incorrectly, that

he would thereby waive a claim of error in the denial of his motion to dismiss the petition to revoke. (*Coss*, 45 Ill. App. 3d at 540.) Despite being admonished by the judge that participation would not amount to waiver of his claim, the attorney did not cross-examine the State's witnesses or present any evidence. (*Coss*, 45 Ill. App. 3d at 540-41.) In *Williams*, a public defender refused to participate in defendant's trial on murder charges. He did not cross-examine witnesses, present any evidence, or make opening or closing statements. (*Williams*, 192 Ill. App. 3d at 308-11.) Like *Hattery, Coss* and *Williams* do not aid defendant due to the qualitative differences in the actions of respective counsel.

"[C]onstitutionally guaranteed assistance of counsel has not been provided if the defendant can prove that counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as to 'deprive the defendant of a fair trial, a trial whose result is reliable.' [Citation.] *** [A] defendant must establish 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068.) Further, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) Finally, if a defendant cannot show prejudice, a court need not examine the question of whether the attorney's performance was deficient. *Albanese*, 104 Ill. 2d at 527, citing *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069-70.

■ Here, defendant has not shown prejudice, but claims that ineffectiveness is presumed under *Hattery*. We have found incomparable the actions of defense counsel in *Hattery* and in the present case. Moreover, our supreme court has held that *Hattery* should be narrowly construed and that "the defendant faces a high burden before he can forsake the two-part *Strickland* test." (*People v. Johnson* (1989), 128 Ill. 2d 253, 269-70.) The *Johnson* court held that ineffectiveness would not be presumed where defense counsel admitted that the defendant had committed murder but not felony murder, and where defense counsel presented no evidence on behalf of the defendant. (*Johnson*, 128 Ill. 2d at 264-72.) Similarly, it was found that *Hattery* did not apply to a case in which defense counsel allegedly conceded the defendant's guilt to a murder charge in closing argument where counsel did attempt to develop a theory of innocence at

trial and did not make "a direct, unequivocal concession of the defendant's guilt of the primary charge against him." *People v. Emerson* (1987), 122 Ill. 2d 411, 430.

The record does not show how defendant was prejudiced by his counsel's failure to cross-examine the three State witnesses. Indeed, these three witnesses were not the State's primary witnesses. Rather each one's testimony could have been omitted with no loss of persuasiveness in the evidence against defendant. For example, police officer Podschweit, who was not cross-examined, testified that he helped with defendant's arrest after defendant had been pulled over. He also saw the gloves and the garbage can full of cigarettes in the car. Officer Nilles, who was cross-examined, testified about the garbage can and the gloves. Officer Anderson, who was not cross-examined, assisted Officer Fuller in interviewing defendant. However, Officer Fuller testified as to the interview. Moreover, defense counsel raised an objection and forced a clarification of the scope of Officer Anderson's testimony. Finally, Officer Sullivan, who was not cross-examined, merely identified photographs of the cigarettes taken from the gas station while they were at the police station. The photos added little to the State's case.

In sum, defendant has not established that he was prejudiced by his attorney's inaction. Thus, he has not shown that he was denied effective assistance of counsel.

## STANDBY STATUS

Defendant next argues that the trial judge erred when, at the time he changed the status of defense counsel to standby counsel, he limited counsel's assistance to aiding defendant in court despite defendant's request for help in drafting motions.

The State asserts that this issue is waived because it was not specified in defendant's post-trial motion. Further, the State claims that the trial court has complete discretion in deciding the nature and extent of standby counsel's involvement and that such discretion was not abused in this case.

First, we will not find this issue to have been waived even though it was not included in defendant's post-trial motion. The essence of defendant's claim is that he should have had professional help in drafting his post-trial motion. It would be unfair to refuse to consider an issue on the grounds that it was not included in a post-trial motion when the very error asserted is purportedly the reason for the post-trial motion's deficiency. Moreover, because this issue also concerns

defendant's right to counsel, it falls within the substantial rights exception to the waiver rule. 134 Ill. 2d R. 615(a).

A trial judge has discretion to appoint standby counsel for a *pro se* defendant. (*People v. Gibson* (1990), 136 Ill. 2d 362, 375.) Additionally, "deciding the nature and extent of standby counsel's involvement" in the case is also a matter within the trial court's discretion. (*People v. Taggart* (1992), 233 Ill. App. 3d 530, 557.) A defendant has no right to a "hybrid trial" where he can alternate between representing himself and being represented by an attorney. *People v. Pondexter* (1991), 214 Ill. App. 3d 79, 88.

Defendant argues that we should follow *People v. Lindsey* (1974), 17 Ill. App. 3d 137, in which it was held that the defendant was prejudiced when the court did not allow standby counsel to cross-examine witnesses or make objections. (*Lindsey*, 17 Ill. App. 3d at 143-44.) However, *Lindsey* is not on point here and does not require reversal. In *Lindsey*, the court emphasized that defendant was prejudiced by having his requests for assistance from standby counsel denied because "the trial court did not initially restrict or limit the availability of" standby counsel. (*Lindsey*, 17 Ill. App. 3d at 143.) Therefore, *Lindsey* implies that no prejudice would have occurred if the trial judge had set limits on standby counsel's availability and the defendant had elected to proceed *pro se* with those limitations. That is exactly what happened here.

The trial judge told defendant before defendant elected to proceed *pro se* that standby counsel would only assist him in court and would not be available to help defendant draft motions. Defendant clearly agreed to represent himself subject to the limitations on standby counsel's availability. Thus, this case is not like *Lindsey*, in which the defendant was apparently surprised by the limits placed on standby counsel's assistance after the defendant had made the decision to represent himself.

Further, we believe that the limits placed on standby counsel's assistance here were not an abuse of discretion. The role of standby counsel is to assist a defendant who has elected to represent himself. (*Gibson*, 136 Ill. 2d at 374-75.) The defendant is in charge of his trial. Because a defendant has no right to a "hybrid trial," it behooves a trial judge to set out the rules to be followed at the time the defendant decides whether to forego full representation. Otherwise, a defendant may misunderstand standby counsel's role.

■ The trial judge was not required to allow defendant to proceed *pro se* with standby counsel (*Taggart*, 233 Ill. App. 3d at 556; *Lindsey*, 17 Ill. App. 3d at 143), and the judge could properly limit

standby counsel's role. (*Taggart*, 233 Ill. App. 3d at 557.) We believe that the dividing line drawn by the trial judge here helped ensure that no "hybrid trial" would occur. We agree with the decision in *Taggart* where it was held that standby counsel was properly prohibited from prompting the defendant to make objections. (*Taggart*, 233 Ill. App. 3d at 556-58.) The trial court there had informed the defendant that standby counsel was "not to prompt you by being the attorney" and that the defendant assumed the responsibility of making objections. (*Taggart*, 233 Ill. App. 3d at 557.) As in *Taggart*, the limitation placed on standby counsel's assistance here was reasonable in light of the fact that defendant could consult with his attorney in court. (*Taggart*, 233 Ill. App. 3d at 557-58.) We reject defendant's assertion that *Taggart* is not persuasive because *Taggart* involved a jury trial while a bench trial took place in this case. While the jury's perception of whether the defendant is truly representing himself is a factor to consider when deciding the scope of standby counsel's role (*Pondexter*, 214 Ill. App. 3d at 88), we do not believe that it is determinative. (See *Taggart*, 233 Ill. App. 3d at 557.) We see no abuse of discretion.

## RIGHT TO COUNSEL

Finally, defendant claims that he is entitled to a new sentencing hearing because the trial judge did not obtain a knowing and voluntary waiver of his right to counsel when defendant represented himself without standby counsel at sentencing. Defendant argues that he was prejudiced because, after defense counsel was dismissed, defendant rejected the TASC treatment that the trial judge was trying to get defendant to accept and defendant offered no argument on his own behalf prior to receiving an extended sentence.

The State argues that the issue is waived because defendant did not challenge his sentence by way of a motion to reconsider. Also, the State contends that the waiver of counsel was proper because defendant had received the requisite warnings 13 months earlier, at his arraignment. The State further asserts that defendant was so sophisticated with regard to the law that the failure to admonish him was harmless.

Again, we reject the State's waiver argument on the basis of the substantial rights exception to the general rule that issues not brought to the trial court's attention cannot be raised on appeal. 134 Ill. 2d R. 615(a); *People v. McClendon* (1990), 197 Ill. App. 3d 472, 482.

Supreme Court Rule 401 governs waivers of the right to counsel in criminal proceedings. It provides, in pertinent part:

"Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." 134 Ill. 2d R. 401(a).

Defendant had a constitutional right to counsel at his sentencing proceeding (*People v. Baker* (1982), 92 Ill. 2d 85, 90), and a waiver of counsel without the proper admonitions is ineffective. (*People v. Langley* (1992), 226 Ill. App. 3d 742, 749.) However, "[s]ubstantial compliance with Rule 401(a) is sufficient to effectuate a valid waiver of counsel *if* the record indicates that the waiver was made knowingly and intelligently." (Emphasis in original.) *People v. Coleman* (1989), 129 Ill. 2d 321, 333.

■ The record here shows that defendant was not given the Rule 401(a) warnings at the time he elected to represent himself at sentencing. The State notes that defendant was given the Rule 401(a) admonitions at his arraignment and cites *Baker* for the proposition that these arraignment admonitions were sufficient. However, defendant's arraignment took place 13 months before sentencing and defendant did not waive his right to counsel at that time. In *Baker*, the accused waived his right to counsel at his arraignment, after being properly informed pursuant to Rule 401(a), and the supreme court merely held "that a competent waiver of counsel at arraignment by a defendant who is advised that he has a constitutional right to counsel at all stages of the proceedings is operative at the time of sentencing." (*Baker*, 92 Ill. 2d at 95.) Thus, *Baker* is not on point.

The State's other main case, *People v. Smith* (1985), 133 Ill. App. 3d 574, is not apposite, either. In that case, the court found that the defendant "did not waive the right to counsel within the meaning of Rule 401(a), and strict compliance with that rule was not necessary" because the defendant had acquiesced to having standby counsel. *Smith*, 133 Ill. App. 3d at 581.

*People v. Langley* (1992), 226 Ill. App. 3d 742, cited by defendant, is also distinguishable. There, the defendant elected to represent him-

self at sentencing and the trial judge provided no admonishments at that time. (*Langley*, 226 Ill. App. 3d at 750-51.) The court found that the defendant was denied his right to counsel and that the defendant was prejudiced because representation by counsel may have made a difference in the sentence imposed. (*Langley*, 226 Ill. App. 3d at 751-52.) Likewise, in this case there were no formal admonitions given when defendant finally rejected standby counsel at the sixth hearing in the sentencing process. However, we do not believe that defendant was prejudiced. First, defendant had the benefit of standby counsel at the first five hearings at sentencing. Second, at the initial hearing, defendant heard the State's Attorney argue that he was eligible for a three- to seven-year sentence, that he was eligible for an extended term based on his prior record, and that the State wanted a term of 10 years' imprisonment. Third, the trial judge informed defendant at this same hearing that an extended-term sentence would be between 7 and 14 years and that, if defendant was not accepted for or did not complete a treatment program, the judge would sentence him to the penitentiary, "probably for as long as I can put you there." Fourth, defendant's standby counsel argued at the second hearing that the court should order drug treatment for defendant.

Because defendant did not elect to represent himself until well into the sentencing proceedings, defendant obviously knew the nature of the charge for which he had been convicted. Defendant was also informed of the penalties which could be imposed upon him. Finally, the record shows that defendant knew of his right to have counsel represent him and to have counsel appointed for that purpose. Thus, we find that the error committed by the trial judge in failing to formally admonish defendant pursuant to Rule 401(a) when defendant rejected standby counsel was harmless under the facts of this case. The record here indicates that defendant's waiver of counsel was knowing and intelligent.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

UNVERZAGT and WOODWARD, JJ., concur.