NOTICE

Decision filed 01/02/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 210110-U

NO. 5-21-0110

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Gallatin County. |
| | ) | |
| v. | ) | No. 20-CF-29 |
| | ) | |
| ZACHARY S. HOLLOWAY, | ) | Honorable |
| | ) | Thomas J. Foster, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court's conviction is affirmed where sufficient admonishment was provided pursuant to Rule 401(a) and defendant's constitutional rights were not violated.

¶ 2     Defendant, Zachary S. Holloway, files a direct appeal from the trial court's judgment of conviction arguing that insufficient Illinois Supreme Court Rule 401(a) (July 1, 1984) admonishments were provided prior to allowing him to proceed *pro se* in his posttrial and sentencing hearings. Defendant further argues that his constitutional rights were violated when he was provided insufficient time to retain private counsel. For the following reasons, we disagree.

¶ 3                              I. BACKGROUND

¶ 4     On May 18, 2020, defendant was charged by information with two counts of home invasion, in violation of section 19-6(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/19-

1

6(a)(2) (West 2018)), two counts of aggravated battery in violation of section 12-3.05(d)(1) and (f)(1) of the Code (*id.* § 12-3.05(d)(1), (f)(1)), and one count of criminal damage to property in violation of section 21-1(a)(1) of the Code (*id.* § 21-1(a)(1)) stemming from an incident on May 16, 2020.

¶ 5    At a pretrial hearing, on August 17, 2020, defendant argued, regarding the home invasion charge, that he was allowed at the home as long as he was sober. The court told defendant to address that issue with his public defender, Lowell Tison. Defendant replied that he wanted "to withdraw Mr. Tison" from his case. The court then read the statutory definition of home invasion to defendant.

¶ 6    Thereafter, defendant stated he was trying to obtain private representation. The court agreed defendant had that right and asked Mr. Tison if he wanted to make a motion on defendant's behalf. Mr. Tison stated he did and confirmed that defendant was trying to retain attorney Aaron Hopkins. Mr. Tison advised the court that they were at 92 days for speedy trial purposes, the victim's deposition was already taken, defendant was willing to waive his right to speedy trial, and stated no prejudice arose from the request. In response, the State opposed any continuance because the witnesses had been subpoenaed, the jury summons had been issued, and further stated it had contacted Mr. Hopkins, who stated he had no interest in getting involved in this case. The State classified defendant's request as a "delay tactic." Thereafter, the court denied defendant's motion to continue the jury trial set for August 25, 2020.

¶ 7    Defendant stated that he had spoken with Mr. Hopkins three times, but Mr. Hopkins had not yet "come and seen [him]." Defendant asked if he could continue to try to reach Mr. Hopkins. The court stated, "That will be up to you, Mr. Holloway." He further admonished defendant that

the jury trial would proceed as scheduled but if Mr. Hopkins entered his appearance the court would possibly revisit the issue.

¶ 8    In response, defendant stated, "I want to withdraw counsel and represent myself." The court asked defendant for clarification stating, "You don't want Mr. Tison to represent you?" Defendant replied, "No, your Honor." The court asked again, "You want to fire Mr. Tison?" Defendant replied, "Yes, sir." After receiving the same response three times, the court asked defendant who would represent him and defendant stated, "I will represent myself." The court again clarified defendant's statement regarding self-representation and, upon receiving the same response, questioned defendant about any legal training and his education. Defendant stated he had no legal training, but after dropping out in eighth grade, he did obtain his GED.

¶ 9    Defendant advised the court that he believed all of his cases were brought together. The court recited to defendant the charges pending in the matter were home invasion involving defendant's entry to Allen McClaughry's home, aggravated battery on Mr. McClaughry, and criminal damage to property involving damage to Mr. McClaughry's truck. Defendant stated he would "have to learn steps as you go along, but I'm going to represent myself. Because I'd rather me put myself away than somebody with a dollar put me away." Defendant then moved to disqualify the state's attorney for being friends with his family. The court stated they needed to first determine if Mr. Tison was going to represent him. Defendant stated that he wanted to make a plea. The court stated it was unaware of any plea negotiations and that home invasion was a very serious offense. The court admonished defendant that the home invasion charges were Class X felonies and the statutory penalties for a Class X felony were 6 to 30 years in the Illinois Department of Corrections (IDOC) and the extended-term range for such offense was 30 to 60 years in IDOC. The court admonished defendant that there was no possibility of probation for a

3

Class X felony, there was a potential fine not to exceed $25,000, and defendant could be ordered to pay restitution to any victim in the case for their out-of-pocket expenses. The court further stated that the term of imprisonment was followed by an additional consecutive term of mandatory supervised release (MSR) for three years. The court stated the other offenses had different and lower penalties and offered to read those to the defendant. Defendant did not respond to the offer and instead asked how he could be charged with home invasion if his address was there. The court stated there may be defenses he could raise at trial.

¶ 10    The court returned to the issue of representation, stating that defendant would be "at a severe disadvantage" if he represented himself, and the court believed he needed counsel in this case. The court explained that Mr. Tison was his attorney until Mr. Hopkins filed his appearance in the case. It averred if defendant did not want Mr. Tison to represent him, defendant was allowed to represent himself. After explaining the rule applicable when witnesses were testifying and addressing whether defendant would be handcuffed at trial, defendant asked, "What's the max I can get if I'm found guilty." The court stated the maximum for an ordinary term on home invasion was 30 years but if defendant was extended-term eligible, the maximum was 60 years. Thereafter, the court asked Mr. Tison if defendant was eligible for an extended term, and Mr. Tison stated that he was only extended-term eligible on Class 3 and 4 felony charges. The court stated if Mr. Tison's statements were true, defendant would face a maximum of 30 years' imprisonment. The State added the sentence would be 85% if great bodily harm was shown. Defendant then asked if he could have a negotiated plea and the court took a brief recess. Upon return, the court asked defendant if he wanted Mr. Tison to represent him. Defendant asked if he could call Mr. Hopkins and the court stated that would have to occur when defendant returned to the county jail.

4

¶ 11    The final pretrial hearing was held on August 24, 2020. At that time, Mr. Tison again moved for a continuance to allow defendant additional time to hire Mr. Hopkins. Defendant advised the court that he spoke with Mr. Hopkins, but Mr. Hopkins said there was not enough time. The court noted there was no appearance or motion to continue filed by Mr. Hopkins and denied defendant's request for a continuance to hire private counsel. The court returned to the issue of penalties related to the other charges and asked defendant if he wanted to hear them. The court read the five counts to defendant, and although defendant disagreed with the merits of the charges, he agreed that he understood the counts. Thereafter, the court read the possible penalties associated with each count, further explaining the 50% and 85% statutory sentence language. The court explained that the one-act, one-crime doctrine might apply and, if it did, defendant would only be sentenced on one home invasion charge and the criminal damage to property charge. It also explained the possibility of any sentence in this case being mandatorily consecutive to the seven-year sentence previously issued in a White County case. Defendant stated he understood the potential penalties.

¶ 12    The case proceeded to a jury trial on August 25, 2020. After each party presented their cases, the jury found defendant guilty on all five charges. The court set the sentencing hearing for February 22, 2021.

¶ 13    On February 18, 2021, defendant filed a "motion for mistrial." The motion stated defendant had "more than enough evidence to prove" his innocence. Defendant also accused his public defender of racketeering and negligence. In support, defendant alleged that his lawyer would not file the motions he requested and the evidence was falsified.

¶ 14    On February 22, 2021, the court inquired as to defendant's claims and held a preliminary *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)). During defendant's lengthy

5

explanation of his claims, defendant asserted that Mr. Tison was going to introduce "stuff" for sentencing. The court stated, "I don't know what's going to happen at the sentencing hearing or even if we are going to get there today, yet, because I want you tell me everything you think that Mr. Tison did that was negligent or constituted racketeering." Defendant then indicated he did not want to sit in prison for 15 or 30 years. The court again reminded him that sentencing had not yet occurred. Defendant averred that Mr. Tison told him that he could be sentenced to 29 or 60 years. The court clarified that, for the home invasion charge, defendant faced 6 to 30 years' imprisonment on an ordinary-term range and 30 to 60 years on an extended-term range, but it was not sure if defendant was eligible for an extended term. The court noted it previously discussed the one-act, one-crime doctrine, and the possible applicability of the 85% rule, but stated defendant was getting too far ahead and needed to back up. Defendant and the court returned to discussing defendant's *Krankel* claims. Following the discussion, the court summarized defendant's allegations of ineffective assistance of counsel as Mr. Tison's: (1) failure to point out inconsistencies in the evidence; (2) failure to file a pretrial motion to dismiss; (3) failure to ask for a mistrial during the trial; (4) failure to call defendant as a witness; (5) failure to move for a change of venue due to the close relationship between the state's attorney and defendant's grandfather; (6) errors in selecting the jury; (7) failure to file a motion to suppress; (8) failure to argue defendant's motion for continuance strongly enough; (9) failure to argue the lack of any weapon in the case; (10) advice not to testify; (10) error in advising defendant not to testify; and (11) alleged $8000 bribe to assure defendant would be found guilty.

¶ 15   The court found that most of the allegations related to trial strategy. One exception was defendant's decision to testify. The court reminded defendant that he told the court, with the court reporter present, and outside the presence of the jury, that he did not wish to testify. The court

6

advised defendant that it would not appoint new counsel to further investigate his claims that Mr. Tison was ineffective and further found that there was no evidence of a bribe, noting that defendant conceded he had no evidence. Thereafter, the court denied defendant's motion for a mistrial and clarified to defendant that he was not getting a new trial.

¶ 16    In response, defendant stated, "Well, I'd like to fire Mr. Tison now." The court asked defendant if he wanted a lawyer to represent him at his sentencing hearing and defendant said, "Yes, I do, but not Mr. Tison." The court advised defendant that he did not get to choose his public defender, so the court denied defendant's request to fire his attorney. Defendant then stated, "I will hire one *** I will hire an attorney." The court asked who defendant was going to hire and defendant responded, "I don't have an idea yet *** I don't have a clue."

¶ 17    The court asked defendant if he had money to hire an attorney and defendant advised the court of $1000 "on the books" and assets totaling $8000. The assets included a 2004 Chevy Silverado and a trailer. The court asked defendant if he wanted to fill out an affidavit of assets and liabilities and defendant said, "Yes, sir." The court admonished defendant that he could lose the opportunity to obtain a public defender if he had sufficient funds to hire an attorney.

¶ 18    The court then asked defendant how long it would take to hire a lawyer and defendant stated it would take 60 days because he needed to "wipe my slate clean" and then he had "to file for a new phone list," explaining that it took "30 days to just get on the list." The court repeatedly asked defendant if he wanted Mr. Tison to represent him if he could not hire a new counsel; each time defendant replied, "No." Defendant also repeatedly confirmed that he would represent himself if he was unable to hire private counsel. The court stated that Mr. Tison was a public defender and if defendant wanted a public defender that was who he would get. Defendant continued to tell the court that he wanted private counsel and if he could not obtain private counsel

7

for his sentencing hearing, he would represent himself. The court again inquired about defendant's assets and liabilities, warning if defendant did not have enough assets to hire a private lawyer, it would proceed to sentencing that day. It further stated it would allow defendant to reconsider his decision to fire Mr. Tison until the end of that hearing but "after that, he's not coming back. Okay? Because I think you are just doing a lot of this to delay the sentencing." The court received a signed liabilities and assets form from defendant and obtained his testimony regarding the same. It again reminded defendant that he needed to inform the court—that day—if he wanted Mr. Tison to come back for the sentencing hearing if he could not obtain private counsel. Defendant confirmed he did not want Mr. Tison to come back. The court found defendant had sufficient assets to obtain private counsel and reset the sentencing hearing for April 19, 2021. It reminded defendant that Mr. Tison would not be present at the sentencing hearing, again noting that defendant had a right to a public defender but not the public defender of his choice.

¶ 19    The sentencing hearing was held on April 19, 2021. Defendant appeared *pro se*. Defendant confirmed that he preferred to represent himself rather than have Mr. Tison as his appointed counsel. Defendant eventually confirmed that he was ready to proceed with his pending motions and the sentencing hearing. The State also indicated it was ready to proceed. After arguments were presented, the court denied all of defendant's pending motions and proceeded to sentencing.

¶ 20    Following presentation of evidence and argument from the parties, the court found great bodily harm. It also found section 5-8-4(d)(8) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(8) (West 2020)) was applicable and therefore the sentences issued in the case at bar were required to be served consecutively to the sentence issued in the White County case. The court then addressed one-act, one-crime doctrine and found that sentencing on count IV aggravated battery was prohibited. After addressing the factors in aggravation and mitigation, the court

8

sentenced defendant to serve concurrently 3 years with 1-year MSR on count V, 5 years with 1-year MSR on count III, and 22 years on counts I and II to be served at 85% with 3 years' MSR. Those sentences would run consecutive to the seven-year sentence issued in White County. Thereafter, the court read defendant his appeal rights and offered to appoint Mr. Tison to assist defendant in filing his appeal paperwork or any motion to reconsider regarding sentencing. Three times defendant stated he did not want Mr. Tison and preferred to handle it himself.

¶ 21                                   II. ANALYSIS

¶ 22     On appeal, defendant argues that the trial court erred by failing to admonish defendant pursuant to Rule 401(a) before allowing him to proceed *pro se*. He also argues that the trial court violated his right to counsel by failing to provide sufficient time for him to obtain personal representation before his sentencing hearing. In response, the State argues that defendant forfeited these issues by failing to raise them with the trial court and failing to request plain error review in his opening brief on appeal.

¶ 23                                   A. Forfeiture

¶ 24     To preserve an error for review, the party must object at trial and present the issue in a posttrial motion. *People v. Nelson*, 235 Ill. 2d 386, 436 (2009). Defendant here asserted both issues for the first time on appeal. He therefore forfeited the issues. Defendant concedes that he failed to preserve his arguments but—in his reply brief—requests plain error review solely for the Rule 401(a) issue.

¶ 25     The Illinois Supreme Court rejected the State's argument that defendant cannot request plain error review for the first time in his reply brief in *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000). The court reasoned that the rules of forfeiture are equally applicable to the State, and

9

therefore the State may forfeit the argument that defendant forfeited an issue. *Id.* at 348. As such, *Williams* allows defendants to request plain error review in the reply brief. *Id.*

¶ 26 Because defendant requested plain error review of the allegedly improper Rule 401(a) admonishments in his reply brief, we find defendant did not forfeit plain error review of this issue. However, defendant made no attempt to request or argue plain error for the issue of whether the court erred in denying him 60 days to obtain private counsel before his sentencing hearing. We therefore find no reason to excuse defendant's forfeiture of such issue and decline to address it.

¶ 27 B. Rule 401(a) Admonishments

¶ 28 Because the right to counsel is fundamental, a reviewing court may review an alleged violation of Rule 401 under the plain error doctrine. *People v. Black*, 2011 IL App (5th) 080089, ¶ 24; *People v. Vázquez*, 2011 IL App (2d) 091155, ¶ 14; *People v. Khan*, 2021 IL App (1st) 190051, ¶ 40. The first step in determining whether plain error applies, however, is determining whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 29 The state and federal constitutions afford defendants a right to counsel. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. This right "applies to all critical stages of the prosecution, including *** sentencing." *People v. Allen*, 220 Ill. App. 3d 772, 781 (1991). A defendant, however, also has a right to waive representation of counsel and proceed *pro se*. *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). "Accordingly, an accused may waive his constitutional right to counsel as long as the waiver is voluntary, knowing and intelligent." *Id.*

¶ 30 Illinois Supreme Court Rule 401 (eff. July 1, 1984) requires the court to complete a specific procedure before it can accept a defendant's waiver of counsel as knowing and intelligent. Under Rule 401(a), the court shall inform the defendant of and determine that the defendant understands:

"(1) the nature of the charge;

10

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 31 Despite statements in defendant's cited authority *People v. Martin*, 2021 IL App (4th) 180267, ¶¶ 36-37, finding the court was "required to mechanically apply Rule 401," the Illinois Supreme Court has determined "Strict, technical compliance with Rule 401(a) *** is not always required." *Haynes*, 174 Ill. 2d at 236. Substantial compliance is sufficient if (1) the record indicates defendant's waiver of the right to counsel was knowing and voluntary, and (2) the given admonishments did not prejudice defendant's rights. *People v. Johnson*, 119 Ill. 2d 119, 132 (1987).

¶ 32 Here, it is undisputed that the trial court did not strictly comply with Rule 401(a), as the court never explicitly admonished defendant pursuant to Rule 401(a) when he proceeded *pro se* at the sentencing hearing. However, a lapse in time between the court providing Rule 401(a) admonishments and the defendant's waiver does not *per se* invalidate defendant's waiver. *Haynes*, 174 Ill. 2d at 242. "Rather, each case must be assessed on its own particular facts." *Id.*

¶ 33 In *Haynes* (*id.* at 241), the Illinois Supreme Court upheld the defendant's waiver of counsel where the trial court substantially complied with Rule 401 about three months prior when defendant first indicated his desire to proceed *pro se*. It reasoned that the admonishments "were given at a time when the defendant had indicated a desire to waive counsel" and the judge "specifically contemplated that the defendant would not make a decision on the waiver issue immediately." *Id.*

11

¶ 34    As such, the trial court's failure to admonish defendant at the sentencing hearing is not dispositive. Defendant initially raised the issue of proceeding *pro se*—less than two months earlier—at the February 22, 2021, *Krankel* hearing. At that time, defendant explicitly and repeatedly informed the court that he would proceed *pro se* if he could not hire private counsel. We therefore find—pursuant to *Haynes*—we can consider the conversation at that hearing in determining whether the court substantially complied with Rule 401(a).

¶ 35    At the *Krankel* hearing—after defendant indicated his desire to fire Mr. Tison—the court twice informed defendant that he had a right to a public defender but did not have the right to the public defender of his choice. The court therefore admonished defendant of his right to counsel (Ill. S. Ct. R. 401(a)(3) (eff. July 1, 1984)). We also find that because the court previously admonished defendant of the nature of all the charges and defendant requested to proceed *pro se* after being convicted, he clearly knew the nature of the charges for which he was convicted as required by Rule 401(a)(1). See *People v. Smith*, 249 Ill. App. 3d 460, 473 (1993) (noting that because the defendant did not elect to represent himself until well into the sentencing proceedings, he "obviously knew the nature of the charge[s] for which he had been convicted"); *People v. Stewart*, 101 Ill. 2d 470, 486 (1984) (in deciding whether the trial court properly gave Rule 402 admonishments, the court found the record demonstrated that defendant understood the nature of the charges against him where he pled guilty with the representation of counsel and the charges were explained at his arraignment). The question thus becomes whether defendant knew of the potential sentencing consequences as required by Rule 401(a)(2).

¶ 36    During the *Krankel* hearing, prior to his indication that he may proceed *pro se*, defendant acknowledged an understanding of this sentencing consequence when he stated that counsel informed him that he could get 60 years' imprisonment. The court also informed defendant that

12

the potential maximum and minimum sentence for the most severe charge, home invasion, was 6 to 30 years' imprisonment or, if extended sentencing applied, 30 to 60 years' imprisonment. The court also explained that it was unsure at that point whether defendant would get day-for-day credit or have to serve 85% of his sentence.

¶ 37    While there were no admonishments for the potential sentencing consequences provided for the aggravated battery and criminal damage to property charges at that time, the failure to admonish defendant of the punishments for one of multiple charged offenses does not require reversal where defendant was fully aware of the range of sentences possible for the most serious charge against him. *People v. Pike*, 2016 IL App (1st) 122626, ¶¶ 123-24; see *Haynes*, 174 Ill. 2d at 243 (trial court's failure to inform the defendant of minimum and maximum sentences possible for burglary charge did not require reversal where defendant was fully aware of range of sentences for the most serious charge, first degree murder, including the possibility of the death sentence). We also note that defendant was advised prior to trial of all the potential penalties for each charge and that any sentence in this case would run consecutively to the sentence in the White County case.

¶ 38    We reject defendant's argument that the court's failure to determine whether he was in fact subject to extended-term sentencing before allowing defendant to proceed *pro se* requires reversal. Although defendant was informed that he *may* be subjected—rather than *would* be subjected—to an extended-term sentence, he knew the maximum extended-term sentence possibly applied, which is all Rule 401(a)(2) requires. See Ill. S. Ct. R. 401(a)(2) (eff. July 1, 1984) ("including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences").

13

¶ 39    Moreover, in *People v. Wright*, 2017 IL 119561, ¶ 54, the Illinois Supreme Court found substantial compliance where the trial court properly admonished defendant in all respects except when it informed him that he faced a maximum sentence of 60 years in prison instead of correctly admonishing the maximum sentence was 75 years. We therefore find where, as here, the court properly admonished defendant to maximum sentence possible, it adequately informed defendant under Rule 401(a)(2). Although the court provided the possible sentencing ranges for the most severe offense prior to trial and prior to defendant indicating his desire to proceed *pro se* at the *Krankel* hearing, the information was presented to defendant at the same hearing that he stated he wished to proceed *pro se* if he could not obtain private counsel and was therefore in the defendant's mind when he made his desire to proceed *pro se* known.

¶ 40    We also find defendant's reliance on *People v. Langley*, 226 Ill. App. 3d 742, 749-50 (1992), is not well placed as the case is easily distinguishable. In *Langley*, the appellate court found the lower court failed to comply with Rule 401(a) where defendant was admonished at his arraignment but did not request to represent himself until seven months later after his conviction. *Id.* It found the defendant could not be expected to rely only on the admonishments given to him several months earlier—at a point when defendant was not requesting to waive counsel. *Id.* Unlike *Langley*, the court here admonished defendant at a time when defendant was contemplating proceeding *pro se*.

¶ 41    We find *People v. Smith*, 249 Ill. App. 3d 460, 473 (1993), instructive. During the trial in *Smith*, the defendant requested that his appointed counsel assume standby status so defendant could handle his case by himself. *Id.* at 463. After being convicted, defendant informed the court that he wished for counsel to remain as standby counsel. *Id.* at 464. Counsel was present for the next five sentencing hearings, during which time counsel helped the defendant write a motion for

14

a new trial and argued that the defendant should receive drug treatment. *Id.* At the sixth hearing for sentencing, the defendant requested to be sentenced immediately and did not want standby counsel in the courtroom. *Id.* at 464-65. The court excused standby counsel and imposed an extended-term sentence. *Id.* at 465.

¶ 42 The Second District found defendant was not given Rule 401(a) admonishments before waiving his right to counsel. *Id.* at 472. It, however, found reversal was not warranted where defendant had the benefit of standby counsel at the first five hearings—one of which counsel argued for the court to order drug treatment—and defendant heard the state's attorney and court explain the potential sentence. *Id.* at 473. The *Smith* court also found that where defendant did not waive counsel until well into the sentencing proceedings, he "obviously knew the nature of the charge for which he had been convicted." *Id.* Also, the record demonstrated defendant knew of his right to counsel. *Id.*

¶ 43 While defendant here did not have standby counsel for any part of the sentencing proceeding, the record—like *Smith*—reveals defendant knew the information required by Rule 401(a) admonishments when he contemplated proceeding *pro se*. Even more, the court explicitly admonished defendant—immediately before he indicated a desire to proceed *pro se*—of the most severe punishment he faced regarding the most severe charge and—after indicating his desire— admonished him of his right to counsel.

¶ 44 Importantly, defendant does not contend he was unaware of the information that Rule 401(a)(1) admonishments would provide. *Johnson*, 119 Ill. 2d at 133. He also fails to argue that any shortcomings of the admonishments impacted his decision to waive his right to counsel. See *Wright*, 2017 IL 119561, ¶¶ 55-56; *Johnson*, 119 Ill. 2d at 134. Moreover, the record as a whole clearly demonstrates that defendant's decision to waive counsel was made freely, knowingly, and

15

intelligently. These facts, combined with the admonishments provided by the court, compel the conclusion that the court substantially complied with Rule 401(a). Because we find the court made no error, there is no plain error, and we honor defendant's forfeiture.

¶ 45                                        III. CONCLUSION

¶ 46    Defendant forfeited any argument that the court erred in failing to provide 60 days to obtain private counsel. While the court did not strictly comply with Rule 401(a), it substantially complied with the rule at a time that defendant decided to proceed *pro se*. We therefore affirm the trial court's judgment and sentence.


¶ 47    Affirmed.