NOTICE

Decision filed 04/14/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240854-U

NO. 5-24-0854

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Gallatin County. |
| | ) | |
| v. | ) | No. 20-CF-29 |
| | ) | |
| ZACHARY S. HOLLOWAY, | ) | Honorable |
| | ) | Thomas J. Foster, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court properly dismissed defendant's postconviction petition where the issues were contradicted by the record and not supported by new evidence. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2   Defendant, Zachary S. Holloway, appeals the circuit court's order summarily dismissing his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), concludes that there is no reasonably meritorious argument that the court erred. Accordingly, it has filed a motion for leave to withdraw as counsel on appeal and a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and this court has given him ample opportunity to respond. However, he has not done so. After considering the record on appeal and OSAD's motion and supporting memorandum, we

1

agree that there is no issue that could support an appeal. Accordingly, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     Defendant was charged with two counts each of home invasion and aggravated battery, as well as criminal damage to property. The victim, Allen McClaughry, is defendant's grandfather. Due to the victim's advanced age and health concerns, the parties agreed to take his evidence deposition pursuant to Illinois Supreme Court Rule 414 (eff. Oct. 1, 1971). Defendant was present with counsel and the trial judge made contemporaneous rulings on objections. However, McClaughry was able to testify at trial and the deposition was never introduced into evidence.

¶ 5     At a pretrial hearing, defendant stated that he wanted to "remove" his public defender and that he had been trying to retain attorney Aaron Hopkins. The State opposed any continuance for that purpose, characterizing the issue as a delay tactic. The court declined to continue the trial date but stated that, if Hopkins entered an appearance, it would revisit the issue.

¶ 6     Defendant then indicated that he wanted to represent himself. After a lengthy exchange with the court, defendant stated that he wanted to continue to be represented by the public defender.

¶ 7     At the final pretrial conference, defendant's public defender sought a continuance so that defendant could try to retain Hopkins. The court again denied a continuance.

¶ 8     At trial, McClaughry testified that, on May 16, 2020, defendant was driving his truck "wide open" up and down the street in front of McClaughry's motor home at 891 Poplar Street. He then turned up the driveway and crashed into McClaughry's truck, causing $3,600 damage. Defendant broke a window of the home, entered, and began punching and kicking him. He then grabbed a knife, which he used to cut his right arm and his ear.

¶ 9    McClaughry testified that he lived alone. Defendant lived a block away and did not have permission to be in his home that night. Deputy Scottie Sauls testified that defendant lived at 869 Poplar Street. He also identified photographs of McClaughry's injuries.

¶ 10    Following a lengthy discussion, during which the court informed defendant that the decision whether to testify was solely his, defendant said that he would "rather just not testify." The defense called Sauls to authenticate McClaughry's written statement that he gave the police the night of the incident so that the defense could highlight certain inconsistencies with his trial testimony. Defendant did not testify.

¶ 11    The jury found defendant guilty. Defendant filed a *pro se* "motion for mistrial" in which he raised numerous allegations of ineffective assistance of counsel and complained that trial evidence was falsified. Defendant argued, *inter alia*, that counsel failed to argue that he could not be guilty of home invasion because he had resided at McClaughry's home for 28 years. He claimed that counsel had prevented him from testifying and had taken a bribe to throw the case. The court held a hearing on defendant's allegations. See *People v. Krankel*, 102 Ill. 2d 181 (1984). The court questioned defense counsel, who denied taking a bribe.

¶ 12    In discussing the evidence, defendant argued that his testimony at sentencing in a separate White County case was "perfectly in line with me not doing it." The State produced a transcript of the White County hearing, which the court admitted into evidence and made part of the record.

¶ 13    After the hearing, the court noted that it had admonished defendant repeatedly that the decision whether to testify was solely his and that the remaining allegations concerned trial strategy. The court concluded that it did not need to appoint new counsel. See *People v. Jackson*, 2020 IL 124112, ¶ 97 (if, after hearing, court finds that an ineffective-assistance claim lacks merit or pertains only to trial strategy, then court need not appoint new counsel).

3

¶ 14    Defendant then said that he wanted to "fire" his public defender and hire private counsel. The court scheduled the sentencing hearing approximately 60 days later. It told defendant that if he could not hire private counsel before the sentencing hearing, he would have to represent himself. Defendant agreed with that arrangement. He later filed *pro se* motions to dismiss and to suppress evidence claiming that the evidence was inconsistent or falsified. The court denied them.

¶ 15    Following the sentencing hearing, at which defendant represented himself, the court sentenced him to concurrent terms of 22 years' imprisonment on each home-invasion count, 5 years on one count of aggravated battery (the court merged the second such count), and 3 years for criminal damage to property.

¶ 16    On direct appeal, this court rejected defendant's arguments that the trial court did not sufficiently admonish defendant before allowing him to proceed *pro se* and provided him insufficient time to obtain private counsel before sentencing. We found both arguments forfeited. *People v. Holloway*, 2024 IL App (5th) 210110-U, ¶¶ 26, 46.

¶ 17    On June 5, 2024, defendant filed a postconviction petition. The petition alleged generally that the trial evidence was circumstantial, altered, perjured, and/or inconsistent; trial and appellate counsel were ineffective; the prosecutor engaged in misconduct and had a conflict of interest due to his friendship with defendant's family; and the court's rulings throughout the proceeding were improper and prejudicial. Defendant attached two of his own affidavits. He averred, *inter alia*, that the state's attorney was "very good friends" with his family and that "they did this to steal the money my father Gustavo Jurence Guisimo sends."

¶ 18    On June 20, 2024, the trial court dismissed the petition, finding it frivolous and patently without merit. Defendant timely appealed.

¶ 19                              ANALYSIS

¶ 20    OSAD contends that there is no nonfrivolous argument that the trial court erred in finding that defendant's petition was frivolous and patently without merit. As did the trial court, OSAD considers each allegation or closely related group of allegations in the petition and concludes that each lacks merit. We agree.

¶ 21    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). Proceedings under the Act are collateral. *People v. Edwards*, 2012 IL 111711, ¶ 21. As a result, issues that were decided on direct appeal or in previous collateral proceedings are barred by *res judicata* (*People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)), and issues that could have been raised earlier, but were not, are forfeited (*People v. Blair*, 215 Ill. 2d 427, 443-44 (2005)).

¶ 22    Section 122-2 of the Act mandates that a postconviction petition "clearly set forth the respects in which petitioner's constitutional rights were violated" and that it "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2024). Thus, the supreme court has repeatedly held that the failure to attach affidavits or other supporting documentation or explain their absence is "fatal to petitioner's claims." *People v. Turner*, 187 Ill. 2d 406, 414 (1999).

¶ 23    In the petition, defendant first reiterated his claim that he could not be convicted of home invasion because he had resided in that home. As charged here, one commits home invasion "when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present *** and *** [i]ntentionally causes any injury." 720 ILCS 5/19-6(a)(2) (West 2020). Thus, a defendant who enters his own residence

5

cannot be found to have entered "the dwelling place of another." *People v. Delacruz*, 352 Ill. App. 3d 801, 810-11 (2004).

¶ 24　Here, however, there was simply no evidence at trial that defendant resided at 891 Poplar Street. McClaughry testified that he lived there alone, and that defendant's residence was approximately a block away. Sauls testified that defendant's residence was at 869 Poplar Street. As the trial court observed, defendant voluntarily chose not to testify, nor did he present any other evidence during trial that he lived at 891 Poplar Street. At the White County hearing, a transcript of which was admitted in this case, defendant testified that his address was 869 Poplar Street. Moreover, he does not explain why, if he legitimately resided at 891 Poplar, he had to break the window to gain entrance.

¶ 25　The only evidence attached to the petition arguably suggesting that defendant resided at 891 Poplar is an arrest warrant, apparently issued in conjunction with the White County case, listing that as his address. However, the warrant was issued on January 30, 2019, well before the incident at issue here. Moreover, the return of service is not filled out. Thus, there is no evidence that defendant was actually found at that address.

¶ 26　Next, defendant makes several claims that the trial evidence was circumstantial, perjured, or altered in some way. Most of these claims are nonspecific and unsupported by affidavits or other evidence. Defendant characterizes these claims as ones of actual innocence. However, counsel concludes that each claim fails because defendant did not include any newly discovered evidence. See *Edwards*, 2012 IL 111711, ¶ 32. (actual-innocence claim requires newly discovered evidence that is material and is sufficiently conclusive to probably change the result on retrial).

¶ 27　Given that defendant's claims do not rest on any newly discovered evidence, they are perhaps more properly viewed as challenges to the sufficiency of the evidence. Such a claim,

6

however, is not appropriate in a postconviction proceeding, the function of which is not to redetermine the defendant's guilt or innocence. *People v. Sanchez*, 2022 IL App (2d) 210431-U, ¶ 21 (citing *People v. Greer*, 212 Ill. 2d 192, 203 (2004)).

¶ 28 In any event, defendant's contentions are without merit. He does not explain his contention that the evidence was circumstantial. McClaughry's testimony that defendant broke into his home and attacked him was direct evidence of guilt. A single witness's positive and credible testimony is sufficient to sustain a conviction even if the defendant contradicts it. *People v. Harris*, 2018 IL 121932, ¶ 27. Moreover, defendant does not explain in any detail his contentions that evidence was fabricated and altered.

¶ 29 Defendant's contentions involve, at most, minor inconsistencies in the evidence. He makes much of the fact, for example, that McClaughry initially said that defendant cut his left arm but testified at trial that his right arm was cut.

¶ 30 "[I]t is the function of the jury as the trier of fact to assess the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *People v. Tenney*, 205 Ill. 2d 411, 428 (2002). It is also for the trier of fact to resolve conflicts or inconsistencies in the evidence, and we will not reverse a conviction "simply because the defendant tells us that a witness was not credible." (Internal quotation marks omitted.) *Id.* Minor inconsistencies in the testimony between witnesses or within one witness's testimony may affect the weight of the evidence but do not automatically create a reasonable doubt of guilt. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85 (citing *People v. Adams*, 109 Ill. 2d 102, 115 (1985)). The trier of fact must judge how flaws in parts of a witness's testimony, including inconsistencies with prior statements, affect the credibility of the whole. *Id.* Thus, the court properly rejected these claims.

¶ 31    Defendant's petition also included several claims related to the Rule 414 deposition. He contended, without reasoned argument or supporting documentation, that the sole purpose of the deposition was for McClaughry and the State to "practice their trial story."

¶ 32    Rule 414 allows the trial court to order an oral deposition to preserve a witness's testimony "because of the substantial possibility it would be unavailable at the time of hearing or trial." Ill. S. Ct. R. 414(a) (eff. Oct. 1, 1971). Because of McClaughry's age and severe medical issues, the parties agreed to take his evidence deposition. Defendant's agreement to the procedure precludes any challenge to it. "[A] defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' " *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). Under the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error. *Id.*

¶ 33    Defendant complained of inconsistencies in McClaughry's deposition testimony. As OSAD notes, McClaughry was able to testify at trial and, thus, the deposition was never used. Any inconsistencies in the deposition testimony could not have prejudiced defendant at trial.

¶ 34    Defendant complains at some length of McClaughry's testimony about the amount of damage to his truck. Defendant did not attach to the petition any evidence suggesting that McClaughry's testimony about damages was inflated. In any event, defendant was charged with the Class 4 felony of criminal damage to property between $500 and $10,000 (720 ILCS 5/21-1(a)(1), (d)(1)(F) (West 2020)), so even if McClaughry significantly inflated the amount of damages, we would not reverse or modify defendant's Class 4 felony conviction.

¶ 35    The petition also made a series of claims about the sentencing hearing. Defendant claimed that the trial court disregarded his motion to exclude witnesses at the sentencing hearing. As OSAD

points out, the record refutes this contention. At no point did anyone move to exclude witnesses. During McClaughry's testimony, the court *sua sponte* excluded witnesses "so we don't have [defendant] becoming upset about you looking at witnesses and so forth."

¶ 36    Defendant complains that McClaughry and Lora Holloway testified that a "brain bleed" McClaughry suffered was caused by defendant's beating him. The trial court subsequently found that the State failed to prove that defendant's conduct caused McClaughry's subsequent "brain bleed," so any error was harmless.

¶ 37    Defendant also raised several claims labeled "prosecutorial misconduct." He contended that the State presented three "altered" exhibits, consisting of photographs of the victim's injuries. Defendant does not explain how the exhibits were altered and does not provide evidence to support the claim. Sauls, who took the photographs, provided an appropriate foundation (see *Johnson v. Bailey*, 2012 IL App (3d) 110016, ¶ 13) and the defense did not object. There is simply no support for defendant's conclusional argument that the photos were altered.

¶ 38    Defendant next complained that the prosecutor had a preexisting relationship with his family. The only support he provides for this contention is that the prosecutor was cordial while questioning McClaughry. That a prosecutor would adopt a cordial tone while questioning an elderly crime victim is not surprising and is not a basis for reversal. Defendant provides no reasoned argument or evidentiary support for his wild allegations of a conspiracy to steal his money, and we need not consider them further. See *People v. Coleman*, 183 Ill. 2d 366, 380 (1998) (allegations in petition must be supported by the record or accompanying affidavits, and nonspecific and nonfactual assertions are insufficient to require an evidentiary hearing).

¶ 39    Defendant also complained that the prosecution never amended the information to allege that defendant's conduct caused great bodily harm. Great bodily harm was not an element of any

offense of which defendant was convicted. However, at sentencing, the court required defendant to serve 85% of his home-invasion sentences after finding that his actions caused great bodily harm. See 730 ILCS 5/3-6-3(a)(2)(iii) (West 2020).

¶ 40      The State was not required to amend the information. Section 3-6-3(a)(2)(iii) provides that "when the court has made and entered a finding *** that the conduct leading to conviction for the enumerated offense resulted in great bodily harm to a victim," the defendant "shall receive no more than 4.5 days of sentence credit for each month of his or her sentence of imprisonment." *Id.* Thus, the statute's plain language requires only a finding by the trial court at the sentencing hearing, not allegations and proof at trial. Moreover, this provision does not violate the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that any fact other than a prior conviction that increases the penalty for an offense beyond the ordinary statutory maximum must be alleged and proved beyond a reasonable doubt. This is because the statute does not change the prescribed maximum penalty for offenses such as home invasion but merely regulates how and where the sentence must be served. *People v. Bell*, 327 Ill. App. 3d 238, 242 (2002) (citing *People v. Garry*, 323 Ill. App. 3d 292, 299 (2001)).

¶ 41      As his last contention in this category, defendant alleged that the State spoke with "and possibly bribed" Hopkins to dissuade him from representing defendant. One week before trial, the prosecutor told the court that he spoke to Hopkins, who stated that he had "no interest to get involved in" defendant's case. Nothing in the record suggests any improper communication between the State and Hopkins and defendant offers no evidence to support his assertions.

¶ 42      The petition also asserted that defense counsel was ineffective. Defendant seemingly asserts that trial counsel unduly influenced his decision not to testify.

10

¶ 43    " 'To establish that a defendant was deprived of effective assistance of counsel, [he] must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)). While the decision whether to testify ultimately belongs to the defendant, it should be made with counsel's advice. *People v. Smith*, 176 Ill. 2d 217, 235-36 (1997).

¶ 44    Here, the court advised defendant multiple times that the decision whether to testify was his alone and defendant ultimately stated that he would rather not testify. The petition includes no affidavits or other evidence to suggest that defense counsel improperly influenced defendant's decision. Thus, as was the case in *Smith*, defendant's decision not to testify must be viewed as strategy with which he agreed.

¶ 45    Defendant further contends that, because he did not testify, he was unable to present evidence that he resided at 891 Poplar Street and, thus, could not have been convicted of home invasion. As noted, defendant's voluntary decision not to testify forfeits this claim. Defendant does not indicate precisely what his testimony would have been. Further, as OSAD points out, the decision not to introduce evidence such as the White County warrant could be seen as sound trial strategy, as it would have presented the jury with evidence that defendant assaulted the victim on another occasion.

¶ 46    Defendant also asserts that appellate counsel was ineffective. Claims of ineffective assistance of appellate counsel are governed by the *Strickland* standard (see *Strickland v. Washington*, 466 U.S. 668 (1984)). *People v. Delgado*, 2022 IL App (2d) 210008, ¶ 26. Normally, appellate counsel's decisions about what issues to raise are entitled to substantial deference. *People v. Johnson*, 205 Ill. 2d 381, 406 (2002). To overcome this presumption, a defendant must show that the failure to raise the issue was objectively unreasonable, as well as a reasonable probability

11

that but for this failure, his sentence or conviction would have been reversed. *People v. Mack*, 167 Ill. 2d 525, 532 (1995). Appellate counsel need not brief every conceivable issue and may refrain from developing nonmeritorious issues because a defendant suffers no prejudice unless the underlying issue is meritorious. *Johnson*, 205 Ill. 2d at 406.

¶ 47 Defendant contended that direct-appeal counsel was ineffective for failing to raise the issues identified in the petition. However, as we have already examined those issues and found them to be without merit—at least in the absence of evidence outside the record, which defendant has not provided—appellate counsel cannot be found ineffective for failing to raise them.

¶ 48 Defendant further contended, however, that direct-appeal counsel said that the issues defendant wanted to raise were inappropriate for direct appeal but at least implicitly promised to raise them in a postconviction petition. However, the petition contains no evidence that appellate counsel was appointed to represent defendant in anything other than the direct appeal.

¶ 49 Generally, the appellate defender's office does not prepare postconviction petitions on behalf of defendants. The State Appellate Defender Act provides that the appellate defender "shall represent indigent persons *on appeal* in criminal and delinquent minor proceedings, when appointed to do so by a court under a Supreme Court Rule or law of this State." (Emphasis added.) 725 ILCS 105/10 (West 2024). Thus, the appellate defender is authorized to represent defendants only in an appeal, and only when specifically appointed by a court pursuant to a rule or statute. The Post-Conviction Hearing Act does not provide for such an appointment.

¶ 50 A defendant has no constitutional right to counsel in a postconviction proceeding; instead, the Act provides a statutory right to counsel. *People v. Stoffel*, 389 Ill. App. 3d 238, 243-44 (2009). Only after a petition survives the first stage of postconviction proceedings and has been found to set forth the gist of a constitutional claim, or the court fails to take any action on the petition within

90 days of filing, does the process advances to the second stage at which time counsel may be appointed. *Id.* (citing *Greer*, 212 Ill. 2d at 203-04); see 725 ILCS 5/122-4 (West 2024). The Act does not provide for appointed counsel to draft an initial postconviction petition.

¶ 51 Finally, counsel concludes that it can make no meritorious argument that the court procedurally erred in dismissing defendant's petition. Counsel notes that the Act requires that a summary dismissal must occur within 90 days of the petition's filing. 725 ILCS 5/122-2.1(a) (West 2024). Here, the petition was filed on June 5, 2024, and the court dismissed it on June 20, 2024, well within the 90-day limit.

¶ 52 Moreover, the record reveals no participation by the State during this time. Section 122-2.1 authorizes the trial court to independently evaluate a postconviction petition. *Id.* § 122-2.1. Because we presume that the court knows and follows the law, where the record does not show that the court sought or relied on input from the State, we presume that the court acted properly. *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996). Accordingly, there is no nonfrivolous argument that the court committed procedural error in dismissing the petition.

¶ 53 CONCLUSION

¶ 54 As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 55 Motion granted; judgment affirmed.